1  **KRIS J. KRAUS**
   California State Bar No. 233699
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  Kris_Kraus@fd.org

5  Attorneys for Mr. Roberto Felix-Rochin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  08CR1902-WQH |
| Plaintiff, | DATE: AUGUST 25, 2008 |
| | TIME: 2:00 p.m. |
| v. | |
| | <u>NOTICE OF MOTIONS AND MOTIONS TO:</u> |
| ROBERTO FELIX-ROCHIN, | |
| | 1) SUPPRESS STATEMENTS |
| Defendant. | |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
      DOUGLAS KEEHN, ASSISTANT UNITED STATES ATTORNEY:

   PLEASE TAKE NOTICE that on August 25, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, defendant, Roberto Felix-Rochin, by and through his attorneys, Kris J. Kraus, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

//
//
//
//
//
//
//

# **MOTIONS**

Defendant, Roberto Felix-Rochin, by and through his attorneys, Kris J. Kraus, and Federal Defenders of San Diego, Inc., asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

(1)     Suppress Statements

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

Dated: August 5, 2008                                                    /s/ Kris J. Kraus
                                                                **KRIS J. KRAUS**
                                                                Federal Defenders of San Diego, Inc.
                                                                Attorneys for Mr. Roberto Felix-Rochin
                                                                Kris_Kraus@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

Douglas Keehn
U S Attorneys Office Southern District of California
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email: douglas.keehn@usdoj.gov

Dated: August 5, 2008       /s/  Kris J. Kraus
                            KRIS J. KRAUS
                            Federal Defenders
                            225 Broadway, Suite 900
                            San Diego, CA 92101-5030
                            (619) 234-8467  (tel)
                            (619) 687-2666  (fax)
                            e-mail: kris_kraus@fd.org

1  **KRIS J. KRAUS**
   California State Bar No. 233699
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5030
   Telephone: (619) 234-8467
4  Kris_Kraus@fd.org

5  Attorneys for Mr. Roberto Felix-Rochin

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10              **(HONORABLE WILLIAM Q. HAYES)**

11 UNITED STATES OF AMERICA,        )   CASE NO.: 08CR1902-WQH
                                    )
12         Plaintiff,                )   DATE: AUGUST 25, 2008
                                    )   TIME:  2:00 P.M.
13 v.                                )
                                    )
14 ROBERTO FELIX-ROCHIN,            )   STATEMENT OF FACTS AND
                                    )   MEMORANDUM OF POINTS AND
15         Defendant.                )   AUTHORITIES IN SUPPORT OF MOTIONS
                                    )

17                                  **I.**

18                    **STATEMENT OF FACTS**[1]

19   Mr. Felix-Rochin incorporates by reference the facts recounted in his previously filed motions.

20 //
21 //
22 //
23 //
24 //
25 //

---

[1]  The statement of facts in the previous motions were based, in part, on materials received from the government. Mr. Felix-Rochin does not accept this statement of facts as his own, and reserves the right to take a contrary position at motions hearing and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard

## II.

## THE COURT MUST SUPPRESS ANY PRE-MIRANDA WARNING STATEMENTS BY MR. FELIX-ROCHIN

**A.    The Court Must Suppress Mr. Felix-Rochin's Alleged Pre-Miranda Statements Because They Were Elicited as the Result of Custodial Interrogation.**

The material produced thus far by the government indicates that Agent Barrientos first confronted and interrogated Mr. Felix-Rochin, regarding his immigration status, at an unknown time, in an unknown area on Interstate Eight near Boulevard, California while Mr. Felix-Rochin was a passenger in sports utility vehicle with unknown others.

"The ruling in Miranda prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046 (9th Cir. 1990). Custodial interrogation occurs when under the totality of the circumstances the questions asked by the police are reasonably likely to elicit an incriminating response from the subject. Id. Although questions that include routine biographical information usually do not trigger the safeguard of Miranda v. Arizona, "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." Id.

In United States v. Kim, 292 F.3d 971, 973 (9th Cir. 2002),[2] the Ninth Circuit noted that the following factors are to be considered in deciding whether or not a police-dominated atmosphere exists: "(1) the language used to summon the individual;  (2) the extent to which the defendant is confronted with evidence of guilt;  (3) the physical surroundings of the interrogation;  (4) the duration of the detention;  and (5) the degree of pressure applied to detain the individual." Id. (citations omitted); see also United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him."). The Ninth Circuit

---

[2]    In Kim, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere." 292 F.3d at 977. This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. Id.

also recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can give rise to a reasonable belief that one is not free to ignore the questions and leave. United States v. Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001).[3]

It is not necessary that an individual be physically restrained in any fashion. In Beraun-Panez, the Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed nor told that he was under arrest, was nonetheless in custody for Miranda purposes. Beraun-Panez held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding." 812 F.2d at 580.[4]

The government may rely on United States v. Galindo-Gallegos, 244 F.3d 728 (9th Cir. 2001), to argue that the pre-Miranda interrogation of Mr. Felix-Rochin was not improper, or even violative of Miranda, because Mr. Felix-Rochin was not in custody. In Galindo-Gallegos, the Ninth Circuit held that the defendant was not in custody because he was questioned in a group of fifteen to twenty people. Relying on the Supreme Court's opinion in Berkermer v. McCarty, 468 U.S. 420 (1984), the Ninth Circuit noted that while the questioning in Galindo-Gallegos was "not as public as a traffic stop on a busy street, [as was the case in Berkemer,] it was public for the reason that mattered; no alien had reason to fear abuse by an officer and an unscrupulous officer would have been deterred from using illegitimate means by all the witnesses." Galindo-Gallegos, 244 F.3d at 732.

Here, the criteria for a police-dominated atmosphere as articulated in Kim are clearly met. Regarding the language used by Agent Barrientos to summon Mr. Felix-Rochin, while the boiler-plate report does not state the exact words used in identifying himself as a border patrol agent and to get Mr. Felix-Rochin into custody, whatever words used clearly indicated to Mr. Felix-Rochin that he was a law enforcement officer and that Mr. Felix-Rochin was in custody. The facts that the agent was in uniform and carrying a gun substantiates this factor. Concerning the extent to which Mr. Felix-Rochin was confronted with guilt, he was apprehended while traveling in a vehicle with other suspected illegal aliens a short distance from the border

---

[3]   Chavez-Valenzuela involved a roadside stop of a motorist on a public street, out in the open.

[4]   The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area. Beraun-Panez, 812 F.2d at 580.

1  and immediately interrogated about his immigration status. The physical surrounding of the interrogation was
2  clearly a remote area as evidenced by the reports description of the area as devoid of any landmarks such as
3  homes or businesses. It is, however, unclear how long the detention took place or the amount of pressure
4  applied to Mr. Felix-Rochin since the agent's report does not address how long the interrogation and detention
5  took and only uses boiler-plate language to describe Mr. Felix-Rochin's responses. Further, the defendant in
6  Kim was isolated from family, a fact that the Court gave great weight to. Kim, 292 F.3d at 977. Here, Mr.
7  Felix-Rochin was with strangers and an armed border patrol agent in a remote and rural area, as in
8  Beraun-Panez. Thus, the statements must be suppressed.

9        The instant case can also be clearly distinguished from Galindo-Gallegos. From the material
10 produced by the government thus far it is apparent that there were only a few other suspected illegal aliens
11 present when Mr. Felix-Rochin was questioned by Agent Barrientos, not amongst the large group of "fifteen
12 or twenty" at issue in Galindo-Gallegos. Moreover, as evidenced by the report, they were clearly in a remote
13 area. As stated before, the report does not indicate the presence of any landmarks near where the arrest was
14 made. This is certainly not the type of "public" questioning that Galindo-Gallegos validated. It is, rather, the
15 type of physical environment that militates toward a finding of custodial interrogation and, therefore,
16 statements must be suppressed.

17       The physical environment of the questioning is not the only important factor. The substance of the
18 questioning is relevant as well. Here, the agent's questioning bore on Mr. Felix-Rochin's alienage, which is
19 an element of the charged offense, 8 U.S.C. § 1326. See United States v. Meza-Soria, 935 F.2d 166, 171 (9th
20 Cir. 1991). This question in a setting so close to the border carried with it implicit suspicion of criminal
21 activity. A person, such as Mr. Felix-Rochin, subjected to such questioning in such a situation does not
22 reasonably feel free to leave, and, thus, is subject to custodial interrogation. See Chavez-Valenzuela, 268 F.3d
23 719, 725 (9th Cir. 2001).

24       In the context of an encounter between border patrol and an individual near the international border,
25 any questioning regarding an individual's alienage falls under the rubric of custodial interrogation.
26 Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil
27 as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied
28 by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983).

In <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d at 1043 (9th Cir. 1990), the defendant appeared at a local police station to provide his state parole officer with a urine sample. <u>Id</u>. at 1046. A second parole officer accused Gonzalez-Sandoval of being a deported alien and called the Border Patrol. <u>Id</u>. The Border Patrol came to the station, and without warning him pursuant to <u>Miranda</u>, asked Gonzalez-Sandoval where he was born and whether he possessed documents to verify the legality of his presence in the United States. <u>Id</u>. The Border Patrol agents then took Gonzalez-Sandoval to the Calexico Border Patrol Station. Failing to administer the <u>Miranda</u> warnings a second time, the agents questioned Gonzalez-Sandoval about any alias he possessed. <u>Id</u>. The agents ran an INS record check against Gonzalez-Sandoval's name and alias, and found Gonzalez-Sandoval's prior immigration record. <u>Id</u>. The Ninth Circuit found that the district court erred in failing to suppress the unwarned, prompted statements by Gonzalez-Sandoval about his name and alias. <u>Id</u>. at 1047.

In <u>United States v. Mata-Abundiz</u>, an INS agent visited the defendant in a state jail to obtain biographical information to determine the defendant's citizenship status. 717 F.2d at 1278. The agent knew about the state charges against Mata-Abundiz, and did not warn him pursuant to <u>Miranda</u> prior to obtaining the biographical data. <u>Id</u>. Afterwards, the agent made further inquiries at his office and within three hours returned to the jail to charge Mata-Abundiz with a federal immigration offense. <u>Id</u>. Despite the fact that the agent characterized his interrogation as pursuant to a civil investigation, the court held that the agent should have warned Mata-Abundiz as required by <u>Miranda</u> because the agent knew his interrogation could lead to federal charges against the defendant. <u>Id</u>. at 1278-1279.

Here, it is obvious that the information the agent elicited from Mr. Felix-Rochin, during the interrogation, regarding his citizenship and application for permission to enter was "reasonably likely to inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326. Moreover, it is undisputed that Mr. Felix-Rochin was not read his <u>Miranda</u> rights at that point, nor advised that his answers to the agent's questions could result in federal charges against him.

Thus, Mr. Felix-Rochin moves to suppress all statements, and the fruits thereof, obtained in violation of <u>Miranda</u>.

//

**B.**   **Mr. Felix-Rochin Requests a Hearing Pursuant to 18 U.S.C. § 3501 Concerning The Admissibility Of Any Statements That The Government Intends to Use Against Him at Trial.**

This Court should conduct an evidentiary hearing to determine whether Mr. Felix-Rochin's statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Felix-Rochin were voluntarily made. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Felix-Rochin understood the nature of the charges against him and whether he understood his rights.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" Id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings.

## III.

## CONCLUSION

For the foregoing reasons, Mr. Felix-Rochin respectfully requests that the Court grant the above motions.

Respectfully submitted,

/s/ Kris J. Kraus

Dated:  August 5, 2008    **KRIS J. KRAUS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Felix-Rochin