1  KAREN P. HEWITT
   United States Attorney
2  DOUGLAS KEEHN
   Assistant U.S. Attorney
3  California State Bar No. 233686
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6549

6  Attorneys for Plaintiff
   United States of America

7

                    **UNITED STATES DISTRICT COURT**
8
                  **SOUTHERN DISTRICT OF CALIFORNIA**
9
                   **(HONORABLE WILLIAM Q. HAYES)**
10

11 | UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1902-WQH |
   | | ) | |
   | Plaintiff, | ) | Date:        August 25, 2008 |
12 | | ) | Time:        2:00 p.m. |
   | v. | ) | |
13 | | ) | GOVERNMENT'S RESPONSE AND |
   | ROBERTO FELIX-ROCHIN, | ) | OPPOSITION TO DEFENDANT'S MOTIONS |
14 | | ) | TO: |
   | Defendant. | ) | |
15 | | ) | (1)   DISMISS INDICTMENT FOR |
   | | ) | FAILURE TO ALLEGE INSPECTION |
16 | | ) | OR EVASION; |
   | | ) | (2)   DISMISS INDICTMENT FOR |
17 | | ) | FAILURE TO ALLEGE *MENS REA*; |
   | | ) | (3)   DISMISS INDICTMENT FOR GRAND |
18 | | ) | JURY VIOLATION; |
   | | ) | (4)   PRODUCE GRAND JURY |
19 | | ) | TRANSCRIPTS; AND |
   | | ) | (5)   LEAVE TO FILE FURTHER MOTIONS |
20 | | ) | |
   | | ) | TOGETHER WITH STATEMENT OF FACTS, |
21 | | ) | MEMORANDUM OF POINTS AND |
   | _____ | ) | AUTHORITIES |
22

23         COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel

24 Karen P. Hewitt, United States Attorney, and Douglas Keehn, Assistant U.S. Attorney, hereby files

25 its Response and Opposition to the motions filed on behalf of Roberto Felix-Rochin ("Defendant").

26 This Response and Opposition is based upon the files and records of this case.

27 //

28 //

# I

## STATEMENT OF FACTS

**A.    Statement of the Case**

On June 11, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Roberto Felix-Rochin with being a Deported Alien Found in the United States in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment also alleges that Defendant was removed from the United States subsequent to January 6, 2000.  Defendant entered a "not guilty" plea before the magistrate court on June 12, 2008.

**B.    Statement of Facts**

**1.    Defendant's Arrest**

On May 30, 2008, at approximately 11:00 a.m., United States Border Patrol Agent ("BPA") T. Barrientos responded to a call from the Boulevard Border Patrol Station that a sports-utility vehicle had picked up suspected illegal immigrants on Interstate Eight, heading eastbound in his vicinity.  BPA Barrientos presently saw a vehicle matching the description he had received.  BPA Barrientos initiated a vehicle stop on the suspect vehicle and identified himself as a Border Patrol Agent.  Defendant was among the passengers in the vehicle.  BPA Barrientos conducted an immigration field interview whereupon Defendant stated that he was a citizen of the Republic of Mexico and was without legal documents permitting him to enter and remain in the United States. Defendant was subsequently taken into custody and transported to the El Centro Border Patrol station for processing.

At the station, Defendant's biographical and biometric data were entered into law enforcement databases, revealing Defendant's criminal history and that Defendant had been previously removed from the United States.

**2.    Defendant's Statements**

At approximately 1:01 p.m. BPA Ivan Mendez advised Defendant of his rights under <u>Miranda</u>.  Defendant indicated he understood those rights, and waiving those rights again admitted he was a citizen of the Republic of Mexico without legal permission to enter and remain in the United States.  Defendant further admitted that he had been previously deported.  Defendant stated

that he had made entry into the United States by walking across the international boundary near Tecate, California, and that he had intended to reside and seek employment in Calexico, California.

## C.    Defendant's Criminal History

On January 6, 2000, Defendant was convicted in the State of California, Oakland Superior Court, for a violation of Penal Code Section 261, Rape by Force or Fear, for which he was sentenced to eight years in prison.

## II

## DISCUSSION

### A.    The Indictment Properly Tracks the Statute and Sufficiently Informs Defendant of the Charges Against Him

Defendant argues that the Indictment is insufficient because it does not allege "inspection and admission by an immigration officer or actual and intentional evasion of inspection at an inspection point" [Def. Mot. at 3, 4.] Defendant further argues that the Indictment was insufficient because it does not allege a "*mens rea* element". [Def. Mot. at 4.]  Defendant's arguments, as conceded by Defendant, are foreclosed by Ninth Circuit law.

#### 1.    The Indictment Need Not Allege Inspection and Admission or Evasion of Inspection

Defendant contends that the Indictment is defective for failure to allege inspection and admission by an immigration officer or actual and intentional evasion of inspection at the nearest inspection point.  Defendant simultaneously acknowledges that this contention was addressed and rejected in United States v. Rivera-Sillas, 417 F.3d 1014 (9th Cir. 2005).  In accordance with prevailing case law, the Indictment sufficiently states the necessary elements of a Section 1326 "found in" offense, as those elements have been identified by the Ninth Circuit.  Accordingly, Defendant's motion should be denied.

The Supreme Court has noted that a charging document is generally sufficient if it sets forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Musacchio, 968 F.2d 782, 787 (9th Cir.1991) (indictment that tracks the

1   statute itself is generally sufficient).  Therefore, an indictment alleging that a defendant is a deported

2   alien subsequently found in the United States without permission is sufficient.

3          Defendant likewise relies on an errant interpretation of the court's ruling in United States

4   v. Pacheco-Medina, 212 F.3d 1162 (9th Cir. 2000).  In Pacheco-Medina, the Ninth Circuit cites the

5   freedom from official restraint prong of the immigration law definition of "entry"as an example of

6   how freedom from official restraint is necessary to "enter" the United States.  Pacheco-Medina did

7   not hold, however, that section 1326 employs the definition of entry developed by the Board of

8   Immigration Appeals ("BIA").  (Def. Mot. at 2.)  Nor does Pacheco-Medina discuss the other two

9   aspects of an "entry" included in BIA's definition of that word.  Thus, while Defendant claims that

10  Pacheco-Medina "focused primarily on the 'official restraint' requirement of the concept of 'entry'

11  under the immigration law" (Id.), the Ninth Circuit in Pacheco-Medina focused entirely on the theme

12  of freedom from official restraint, without even mentioning either of the other two components of

13  entry.  There is no requirement that the Indictment allege an actual inspection and admission by an

14  immigration officer, or an actual and intentional evasion of inspection at the nearest inspection point.

15  Rather, as the Ninth Circuit noted in Parga-Rosas,

16          [w]e have never suggested that the crime of "entry" must be charged in order to charge the
            crime of being "found in."  Nor did we mean to prescribe a new rule for pleading when we
17          said in Pacheco-Medina that "an entry, as defined legally, is required before a person is
            'found in' the United States."  Rather, we were simply making clear that a person who has
18          not legally entered the country by being free of official restraint at the border logically
            "cannot have been found in a place he did not succeed in entering."  We see no reason to
19          invalidate Parga-Rosas's indictment because it did not go further than charging the statutory
            elements for being "found in" the United States.  Alleging that the defendant is a deported
20          alien subsequently found in the United States without permission suffices.

21  Parga-Rosas, 238 F.3d at 1213 (internal citations omitted).  In short, Section 1326 "found in"

22  prosecutions require that the indictment allege that the defendant be a deported alien found in the

23  United States without the Attorney General's consent.  Each of those elements were alleged in the

24  Indictment in this matter.  Defendant's motion should therefore be denied.

25  //

26  //

27  //

28

4                                      08CR1902-WQH

1
## 2.   The Indictment Should not be Dismissed for "Failure to Allege the *Mens Rea* of the Charged Offense"

2     Defendant also contends the Indictment should be dismissed for not alleging the appropriate

3     *mens rea* of the charged offense.  In particular, he claims that the Indictment was fatally flawed

4     because it did not allege that Defendant knew he was in the United States.  Defendant likewise

5     acknowledges that this challenge to the Indictment is foreclosed by Ninth Circuit law.

6          The Ninth Circuit has rejected the argument that charging a defendant with being "found in

7     the United States" insufficiently alleges *mens rea*.  United States v. Rivera-Sillas, 417 F.3d 1014,

8     1020-21 (9th Cir. 2005).  This Indictment charges Defendant with being found in the United States

9     after deportation, in violation of 8 U.S.C. § 1326.  The Ninth Circuit has held that a "found in"

10    offense under section 1326 is a general intent crime and "[w]e are comfortable presuming that a

11    defendant who is found in the United Sates willfully and knowingly acted in order to enter this

12    country."  Id. at 1020.  Therefore, alleging that Defendant is a deported alien subsequently found

13    in the United States without permission is sufficient to allege general intent.  Id.

14          More to the point, the court in Rivera-Sillas noted:

15          Rivera-Sillas next argues that the district court should have dismissed the indictment
            because it did not charge a *mens rea* element: general intent. He contends that the
16          indictment had to charge him with knowing that he was in the United States.

17    Id. (Emphasis added.)  The court went on to hold:

18          Rivera-Sillas contends that if the Government need not prove that a defendant has
            knowledge of his presence in the United States, a person may be criminally
19          convicted for inadvertently wandering into this country. We addressed this potential
            problem in dicta in United States v. Quintana-Torres.  In that case, we concluded that
20          there are multiple possibilities of unknowing and/or involuntary entry into the United
            States.

21          Because involuntary presence in the United States is the rare exception and not the
22          rule, however, we allow an inference of voluntariness where the defendant has raised
            no evidence to the contrary.

23    Id. at 1020-21 (emphases added; citations and footnotes omitted).  The Rivera-Sillas court then held,

24    "Thus, because Rivera-Sillas's indictment did allege 'that he was deported, removed, and

25    subsequently present without consent of the Attorney General,' it 'fairly conveyed that [his]

26    presence was a voluntary act.' We therefore affirm the district court." Id. at 1021 (footnote omitted).

27    Therefore, even though United States v. Salazar-Gonzalez, 458 F.3d 851 (9th Cir. 2006) requires

28

a jury instruction speaking to whether a defendant has knowledge of his presence in the United States, <u>Rivera-Sillas</u> establishes that an allegation of such need not appear in the indictment.

Defendant's claim that <u>Staples v. United States</u>, 511 U.S. 600 (1994), mandates a different conclusion is in error.  <u>Staples</u> is inapposite to a section 1326 "found in" offense.  The Supreme Court in <u>Staples</u> considered whether the Government had to prove that the defendant had knowledge of the features of the gun that he possessed to bring it within the scope of the National Firearms Act.  511 U.S. at 619.  The <u>Staples</u> opinion was concerned about criminalizing items that are potentially innocent to possess, such as a gun or food stamps.  <u>Id.</u> at 610.  <u>Staples</u> concluded the Government needed to prove knowledge of the illegality of the gun, and it read a *mens rea* requirement into a statute that was otherwise silent.  <u>Id.</u> at 619.  The <u>Staples</u> opinion, however, emphasized that such a holding was a narrow one.  "As in our prior cases, our reasoning depends upon a commonsense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items."  <u>Id.</u>

As held in <u>Rivera-Sillas</u>, a "found in" offense does have a *mens rea* element: being "found in" is a general intent crime.  417 F.3d at 1020.  A violation of section 1326 is different from illegal possession of an item that may otherwise be innocently possessed.  Section 1326 makes it a crime to re-enter the United States after having been previously deported and informed not to return without permission of the Attorney General.  Unlike the possibility of innocent possession of a firearm in <u>Staples</u>, Congress clearly intended section 1326 to prevent the possibility of "innocent" presence in the United States after a deportation.  Section 1326 seeks to punish the act of being present in the United States after exclusion, deportation or removal.

Defendant further contends that <u>Carter v. United States</u>, 530 U.S. 255, 269 (2000), supports his argument.  This contention is also in error.  To the contrary, <u>Carter</u> held that absent an unambiguous legislative direction to the contrary, a court should "read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'"  <u>Carter</u>, 530 U.S. at 269 (quoting <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 72 (1994)).

Section 1326 is not a status offense.  Parga-Rosas, 238 F.3d 1209, 1212 (9th Cir. 2001); United States v. Ayala, 35 F.3d 423, 425 (9th Cir. 1994).  As indicated in Parga-Rosas, Defendant is not being punished because of his status as a deported alien.  Instead, he is being punished for having re-entered the United States without permission and then remaining here.  Parga-Rosas, 238 F.3d at 1212.  Given that the statute already separates wrongful conduct from innocent conduct, Carter does not mandate that the statute require knowledge that one lacks permission to reenter or knowledge of the other essential elements of the crime.  Because a "found in" offense under section 1326 is a general intent crime and the Indictment in this matter sufficiently alleges that intent, Defendant's motion should be denied.

**B.     The Grand Jury Instructions Were Not Faulty and the Indictment Should Not be Dismissed**

   **1.     Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [Def. Mot. at 6.] [1]/ Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures.  The Supreme Court discourages this practice. United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the

---

[1]    Defendant refers in his motion to an "Exhibit A" transcript of the grand jury proceedings, apparently omitted from his filing.  We are supplying a Supplemental Transcript which records relevant portions of the *voir dire* proceedings.  [Appendix 1.]

1  judicial supervisory power as a basis for prescribing modes of grand jury procedure."). [Id.] Isgro

2  reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The
> supervisory powers doctrine "is premised on the inherent ability of the federal courts
> to formulate procedural rules not specifically required by the Constitution or
> Congress to supervise the administration of justice." Before it may invoke this
> power, a court must first find that the defendant is actually prejudiced by the
> misconduct. Absent such prejudice– that is, absent "'grave' doubt that the decision
> to indict was free from the substantial influence of [the misconduct]"– a dismissal
> is not warranted.

8  974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction,

9  in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the

10 Constitution as a reason to dismiss the Indictment. [Def. Mot at 21. ("A grand jury so badly

11 misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a

12 contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes
> with the grand jury's independence and the integrity of the grand jury proceeding.
> "Constitutional error is found where the 'structural protections of the grand jury have
> been so compromised as to render the proceedings fundamentally unfair, allowing
> the presumption of prejudice' to the defendant." Constitutional error may also be
> found "if [the] defendant can show a history of prosecutorial misconduct that is so
> systematic and pervasive that it affects the fundamental fairness of the proceeding
> or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2/]

> The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is,
> whether or not there should or should not be a federal law designating certain activity
> as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide
> you with important service in helping you to find your way when confronted with
> complex legal problems. It is entirely proper that you should receive this assistance.

---

[2]  In Isgro the defendants choose the abrogation of constitutional rights route when asserting
that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail.
974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support
the dismissal of the indictment." (relying on Williams)).

1
2

> If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

3  408 F.3d at 1187, 1206.

4  Concerning the "wisdom of the criminal laws" instruction, the court stated it was

5  constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

6  policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

7  nullification.'"[3]  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools

8  for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments

9  from the parties.  The grand jury has little but its own visceral reaction on which to judge the

10  'wisdom of the law.'"  Id.

11  Concerning the "United States Attorney and his Assistant United States Attorneys"

12  instruction, the court stated:

13
14
15
16
17

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

18  408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the

19  grand jury of the presumption of regularity and good faith that the branches of government

20  ordinarily afford each other."  Id.

21  **2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

22  Concerning whether the new grand jurors should concern themselves with the wisdom of the

23  criminal laws enacted by Congress, Judge Burns' full instruction stated:

24
25

26
27
28

[3]    The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.

And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4]

Defendant acknowledges that in line with <u>Navarro-Vargas</u>, Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" Defendant notes, however, that the instructions go beyond that, however, and tell the grand jurors that, "should you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'." [Def. Mot. at 7.] Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." [Def. Mot. at 7.] Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he excused three potential jurors.

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. [Def. Mot. at 14.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

---

[4] The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of the three individuals. This transcript involves the *voir dire* portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

08CR1902-WQH

1    disagree with a proposed prosecution." [Def. Mot. at 14.]  This argument mixes-up two of the

2    holdings in <u>Navarro-Vargas</u> in the hope they will blend into one.  They do not.

3        <u>Navarro-Vargas</u> does permit flatly barring the grand jury from disagreeing with the wisdom

4    of the criminal laws.  The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted

5    by Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an

6    expression of discretion.  Jury nullification is forbidden although acknowledged as a *sub rosa* fact

7    in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his

8    rights, and within the law, when he excused the three prospective grand jurors because of their

9    expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind

10   the impaneled grand jurors that they could not question the wisdom of the laws.  As we will

11   establish, this reminder did not pressure the grand jurors to give up their discretion not to return an

12   indictment.  Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from

13   declining to indict because the grand jurors disagree with a proposed prosecution, because they do

14   not say that.  That aspect of a grand jury's discretionary power (i.e. disagreement with the

15   prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the

16   term "should" was germane.[5/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

17   This other instruction bestows discretion on the grand jury not to indict.[6/]  In finding this instruction

18

19        [5]    That instruction is not at issue here.  It read as follows:

20        [Y]our task is to determine whether the government's evidence as presented to you
          is sufficient to cause you to conclude that there is probable cause to believe that the
21        accused is guilty of the offense charged.   To put it another way, you should vote to
          indict where the evidence presented to you is sufficiently strong to warrant a
22        reasonable person's believing that the accused is probably guilty of the offense with
          which the accused is charged.

23   408 F.3d at 1187.

24        [6]    The court upheld the instruction stating:

25        This instruction does not violate the grand jury's independence.  The language of the
          model charge does not state that the jury "must" or "shall" indict, but merely that it
26        "should" indict if it finds probable cause.  As a matter of pure semantics, it does not
          "eliminate discretion on the part of the grand jurors," leaving room for the grand jury
27        to dismiss even if it finds probable cause.

28   408 F.3d at 1205 (confirming holding in <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir.

constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

---

2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment." 408 F.3d at 1206.

1    Further, a reading of the dialogues between Judge Burns and the three excused jurors found

2 in the Supplemental Transcript excerpts (Appendix 1) reflects a measured, thoughtful, almost mutual

3 decision, that those three individuals should not serve on the grand jury because of their views.

4 Judge Burns' reference back to those three colloquies cannot be construed as pressuring the

5 impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

6    Finally, even if there was an error, Defendant has not demonstrated he was actually

7 prejudiced thereby, a burden he has to bear.  "Absent such prejudice--that is, absent 'grave' doubt

8 that the decision to indict was free from the substantial influence of [the misconduct]--a dismissal

9 is not warranted."  Isgro, 974 F.2d at 1094.

10    **3.    The Addition to the "United States Attorney and His Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

11    Concerning the new grand jurors' relationship to the United States Attorney and the

12 Assistant U.S. Attorneys, Judge Burns variously stated:

13    [T]here's a close association between the grand jury and the U.S. Attorney's Office.

14    . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

15 Partial Transcript p. 11.

16
17    [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.  They generally work together.

18 Partial Transcript p. 12.

19
20    Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

21
22
23 Partial Transcript p. 20.[7]

24

25    [7]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

26    [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

27

28 Partial transcript p. 19.

As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, Judge Burns also assured the grand jurors "that prosecutors would present to them evidence that tended to undercut probable cause." [Def. Mot. at 20.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Def. Mot. at 21.] From this lash-up Defendant contends:

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

14                                  08CR1902-WQH

[Def. Mot. at 21.]    (Emphasis added.)[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[9/] (emphasis added)). See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[10/] As such he was undoubtedly aware of the provisions in the United States Attorneys'

---

[8]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[9]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[10]    He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

15                                    08CR1902-WQH

Manual ("USAM").[11] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[12] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[13]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the

---

[11]   The   USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[12]   See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[13]
       See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[14/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15/]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information

---

[14] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[15] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

1  does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea

2  that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM

3  imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand

4  jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits

5  from the self-imposed policy.[16]  Therefore, while the "duty-bound" statement was an interesting

6  tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and

7  responsibilities, and does not cast an unconstitutional pall upon the instructions which requires

8  dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by

9  Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by

10  Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").

11  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

12  accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In

13  this context the unnecessary "duty-bound" statement does not mean the instructions were

14  constitutionally defective requiring dismissal of this indictment or any indictment.

15         The "duty bound" statement constitutional contentions raised by Defendant do not indicate

16  that the "'structural protections of the grand jury have been so compromised as to render the

17  proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

18  "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

19  pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

20  grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this

21  Indictment, or any other indictment, need not be dismissed.

22  **C.    The Motion to Produce Grand Jury Transcripts Should be Denied**

23         Defendant seeks production of the grand jury transcripts yet fails to support his motion with

24  anything approximating the requisite need to invade the sanctity of the grand jury's deliberations.

25  As such, his motion should be denied.

26

27

28  _____

[16]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

08CR1902-WQH

1    The need for grand jury secrecy remains paramount unless the defendant can show "a

2   particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783

3   F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985).

4   Defendant has not suggested any ground on which proceedings before the grand jury would warrant

5   dismissal of the indictment.  It is well settled that the grand jury may indict someone based on

6   inadmissible evidence or evidence obtained in violation of the rights of the accused.  See United

7   States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in

8   violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338,

9   343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence

10   obtained in violation of defendant's right against self-incrimination) ; Lawn v. United States, 355

11   U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment

12   nor any other constitutional provision prescribes the kind of evidence upon which grand juries must

13   act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States,

14   404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968);  Huerta v.

15   United States, 322 F.2d 1 (9th Cir. 1963).

16    The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role.  See

17   United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005).  Tracing the history

18   of the grand jury from English common law, the U.S. Supreme Court has observed that grand jurors

19   were not hampered by technical or evidentiary laws, and traditionally could return indictments based

20   not on evidence presented to them at all, but on their own knowledge of the facts.  See Costello, 350

21   U.S. at 363.  In light of this tradition, the Court held that "neither the Fifth Amendment nor any other

22   constitutional provision prescribes the kind of evidence upon which grand juries must act," and that

23   grand jury indictments could not be challenged based on the insufficiency or incompetence of the

24   evidence.  Id.  Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury,

25   like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the

26   charge on the merits."  Id. at 409.

27

28

1    There is no basis upon which to dismiss the Indictment.  Indeed, Defendant does not and

2    cannot identify a single untoward thing that might have occurred before the grand jury which could

3    possibly warrant dismissal.  As such, his request for transcripts should be denied.

4    **D.**    **Motion for Leave to File Other Motions**

5        The United States does not object to the granting of leave to allow Defendant to file further

6    motions, as long as the order applies equally to both parties and additional motions are based on

7    newly discovered evidence or discovery provided by the United States subsequent to the instant

8    motion at issue.

9                            **III**

10                        **CONCLUSION**

11        For the foregoing reasons, the United States requests that the Court deny Defendant's

12    Motions as opposed.

13        Dated: August 6, 2008.

14                                Respectfully Submitted,

15                                KAREN P. HEWITT
                                 United States Attorney

16

17

                                 s/ *Douglas Keehn*
18                                DOUGLAS KEEHN
                                 Assistant United States Attorney
19                                Attorneys for Plaintiff
                                 United States of America

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No.  08CR1902-WQH |
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| ROBERTO FELIX-ROCHIN, | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED THAT:

     I, DOUGLAS KEEHN, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**

     1.    DISMISS INDICTMENT FOR FAILURE TO ALLEGE INSPECTION OR EVASION;
     2.    DISMISS INDICTMENT FOR FAILURE TO ALLEGE *MENS REA*;
     3.    DISMISS INDICTMENT FOR GRAND JURY VIOLATION;
     4.    PRODUCE GRAND JURY TRANSCRIPTS; AND
     5.    LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     **Kris J. Kraus**
     Kris_Kraus@fd.org

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 6, 2008.

                         s/ *Douglas Keehn*
                         DOUGLAS KEEHN

# APPENDIX 1

## Grand Jury Instructions



1        UNITED STATES DISTRICT COURT

2        SOUTHERN DISTRICT OF CALIFORNIA

3

4

5

    IN RE:  THE IMPANELMENT                )
6                                          )
    OF GRAND JURY PANELS 07-1 AND          )
7                                          )
    07-2                                   )
8                                          )
                                           )
9   _____)

10

11        BEFORE THE HONORABLE LARRY ALAN BURNS

12            UNITED STATES DISTRICT JUDGE

13

14     REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

15          WEDNESDAY, JANUARY 11, 2007

16

17

18

19

20

21
    COURT REPORTER:            EVA OEMICK
22                             OFFICIAL COURT REPORTER
                               UNITED STATES COURTHOUSE
23                             940 FRONT STREET, STE. 2190
                               SAN DIEGO, CA 92101
24                             TEL: (619) 615-3103

25

| | |
|---|---|
| 1 | **SAN DIEGO, CALIFORNIA-WEDNESDAY, JANUARY 11, 2007-9:30 A.M.** |
| 2 | THE COURT:  LADIES AND GENTLEMEN, YOU HAVE BEEN |
| 3 | SELECTED TO SIT ON THE GRAND JURY.  IF YOU'LL STAND AND RAISE |
| 4 | YOUR RIGHT HAND, PLEASE. |
| 5 | MR. HAMRICK:  DO YOU, AND EACH OF YOU, SOLEMNLY |
| 6 | SWEAR OR AFFIRM THAT YOU SHALL DILIGENTLY INQUIRE INTO AND |
| 7 | MAKE TRUE PRESENTMENT OR INDICTMENT OF ALL MATTERS AND THINGS |
| 8 | AS SHALL BE GIVEN TO YOU IN CHARGE OR OTHERWISE COME TO YOUR |
| 9 | KNOWLEDGE TOUCHING YOUR GRAND JURY SERVICE; TO KEEP SECRET THE |
| 10 | COUNSEL OF THE UNITED STATES, YOUR FELLOWS AND YOURSELVES; NOT |
| 11 | TO PRESENT OR INDICT ANY PERSON THROUGH HATRED, MALICE OR ILL |
| 12 | WILL; NOR LEAVE ANY PERSON UNREPRESENTED OR UNINDICTED THROUGH |
| 13 | FEAR, FAVOR, OR AFFECTION, NOR FOR ANY REWARD, OR HOPE OR |
| 14 | PROMISE THEREOF; BUT IN ALL YOUR PRESENTMENTS AND INDICTMENTS |
| 15 | TO PRESENT THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE |
| 16 | TRUTH, TO THE BEST OF YOUR SKILL AND UNDERSTANDING? |
| 17 | IF SO, ANSWER, "I DO." |
| 18 | (ALL GRAND JURORS ANSWER AFFIRMATIVELY) |
| 19 | THE COURT:  ALL JURORS HAVE TAKEN THE OATH AND |
| 20 | ANSWERED AFFIRMATIVELY. |
| 21 | IF YOU'LL HAVE A SEAT.  WE ARE NEARLY COMPLETED WITH |
| 22 | THIS PROCESS. |
| 23 | I AM OBLIGATED BY THE CONVENTION OF THE COURT AND |
| 24 | THE LAW OF THE UNITED STATES TO GIVE YOU A FURTHER CHARGE |
| 25 | REGARDING YOUR RESPONSIBILITY AS GRAND JURORS.  THIS WILL |

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    APPLY NOT ONLY TO THOSE WHO HAVE BEEN SWORN, BUT THE REST OF

2    YOU WHOSE NAMES HAVE NOT YET BEEN CALLED, YOU ARE GOING TO BE

3    PUT IN RESERVE FOR US.

4            AND IF DISABILITIES OCCUR -- I DON'T MEAN IN A

5    PHYSICAL SENSE, BUT PEOPLE MOVE OR SITUATIONS COME UP WHERE

6    SOME OF THE FOLKS THAT HAVE BEEN SWORN IN TODAY ARE RELIEVED,

7    YOU WILL BE CALLED AS REPLACEMENT GRAND JURORS.  SO THESE

8    INSTRUCTIONS APPLY TO ALL WHO ARE ASSEMBLED HERE TODAY.

9            NOW THAT YOU HAVE BEEN IMPANELED AND SWORN AS A

10   GRAND JURY, IT'S THE COURT'S RESPONSIBILITY TO INSTRUCT YOU ON

11   THE LAW WHICH GOVERNS YOUR ACTIONS AND YOUR DELIBERATIONS AS

12   GRAND JURORS.

13           THE FRAMERS OF OUR FEDERAL CONSTITUTION DETERMINED

14   AND DEEMED THE GRAND JURY SO IMPORTANT TO THE ADMINISTRATION

15   OF JUSTICE THAT THEY INCLUDED A PROVISION FOR THE GRAND JURY

16   IN OUR BILL OF RIGHTS.

17           AS I SAID BEFORE, THE 5TH AMENDMENT TO THE UNITED

18   STATES CONSTITUTION PROVIDES, IN PART, THAT NO PERSON SHALL BE

19   HELD TO ANSWER FOR A CAPITAL OR OTHERWISE INFAMOUS CRIME

20   WITHOUT ACTION BY THE GRAND JURY.

21           WHAT THAT MEANS IN A VERY REAL SENSE IS YOU'RE THE

22   BUFFER BETWEEN THE GOVERNMENT'S POWER TO CHARGE SOMEONE WITH A

23   CRIME AND THAT CASE GOING FORWARD OR NOT GOING FORWARD.

24           THE FUNCTION OF THE GRAND JURY, IN FEDERAL COURT AT

25   LEAST, IS TO DETERMINE PROBABLE CAUSE.  THAT'S THE SIMPLE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1   FORMULATION THAT I MENTIONED TO A NUMBER OF YOU DURING THE

2   JURY SELECTION PROCESS.  PROBABLE CAUSE IS JUST AN ANALYSIS OF

3   WHETHER A CRIME WAS COMMITTED AND THERE'S A REASONABLE BASIS

4   TO BELIEVE THAT AND WHETHER A CERTAIN PERSON IS ASSOCIATED

5   WITH THE COMMISSION OF THAT CRIME, COMMITTED IT OR HELPED

6   COMMIT IT.

7          IF THE ANSWER IS YES, THEN AS GRAND JURORS YOUR

8   FUNCTION IS TO FIND THAT THE PROBABLE CAUSE IS THERE, THAT THE

9   CASE HAS BEEN SUBSTANTIATED, AND IT SHOULD MOVE FORWARD.  IF

10  CONSCIENTIOUSLY, AFTER LISTENING TO THE EVIDENCE, YOU SAY "NO,

11  I CAN'T FORM A REASONABLE BELIEF EITHER THAT A CRIME WAS

12  COMMITTED OR THAT THIS PERSON HAS ANYTHING TO DO WITH IT, THEN

13  YOUR OBLIGATION, OF COURSE, WOULD BE TO DECLINE TO INDICT, TO

14  TURN THE CASE AWAY AND NOT HAVE IT GO FORWARD.

15         A GRAND JURY CONSISTS OF 23 MEMBERS OF THE COMMUNITY

16  DRAWN AT RANDOM.  I'VE USED THE TERM "INFAMOUS CRIME."  AN

17  INFAMOUS CRIME, UNDER OUR LAW, REFERS TO A SERIOUS CRIME WHICH

18  CAN BE PUNISHED BY IMPRISONMENT BY MORE THAN ONE YEAR.  THE

19  PROSECUTORS WILL PRESENT FELONY CASES TO THE GRAND JURY.

20  MISDEMEANORS, UNDER FEDERAL LAW, THEY HAVE DISCRETION TO

21  CHARGE ON THEIR OWN.  AND THEY'RE NOT -- THOSE CHARGES --

22  MISDEMEANORS AREN'T ENTITLED TO PRESENTMENT BEFORE A GRAND

23  JURY.

24         BUT ANY CASE THAT CARRIES A PENALTY OF A YEAR OR

25  MORE MUST BE PRESENTED TO -- ACTUALLY, MORE THAN A YEAR.  A

PDF created with pdfFactory trial version www.pdffactory.com

1    YEAR AND A DAY OR LONGER MUST BE PRESENTED TO A GRAND JURY.

2             THE PURPOSE OF THE GRAND JURY, AS I MENTIONED, IS TO

3    DETERMINE WHETHER THERE'S SUFFICIENT EVIDENCE TO JUSTIFY A

4    FORMAL ACCUSATION AGAINST A PERSON.

5             IF LAW ENFORCEMENT OFFICIALS -- AND I DON'T MEAN

6    THIS IN A DISPARAGING WAY.  BUT IF LAW ENFORCEMENT OFFICIALS,

7    INCLUDING AGENTS AS WELL AS THE FOLKS THAT STAFF THE U.S.

8    ATTORNEY'S OFFICE, WERE NOT REQUIRED TO SUBMIT CHARGES TO AN

9    IMPARTIAL GRAND JURY TO DETERMINE WHETHER THE EVIDENCE WAS

10   SUFFICIENT, THEN OFFICIALS IN OUR COUNTRY WOULD BE FREE TO

11   ARREST AND BRING ANYONE TO TRIAL NO MATTER HOW LITTLE EVIDENCE

12   EXISTED TO SUPPORT THE CHARGE.  WE DON'T WANT THAT.  WE DON'T

13   WANT THAT.

14            WE WANT THE BURDEN OF THE TRIAL TO BE JUSTIFIED BY

15   SUBSTANTIAL EVIDENCE, EVIDENCE THAT CONVINCES YOU OF PROBABLE

16   CAUSE TO BELIEVE THAT A CRIME PROBABLY OCCURRED AND THE PERSON

17   IS PROBABLY RESPONSIBLE.

18            NOW, AGAIN, I MAKE THE DISTINCTION YOU DON'T HAVE TO

19   VOTE ON ULTIMATE OUTCOMES.  THAT'S NOT UP TO YOU.  YOU CAN BE

20   ASSURED THAT IN EACH CASE, YOU INDICT THE PERSON WHO WILL BE

21   ENTITLED TO A FULL SET OF RIGHTS AND THAT THERE WILL BE A JURY

22   TRIAL IF THE PERSON ELECTS ONE.  THE JURY WILL HAVE TO PASS ON

23   THE ACCUSATION ONCE AGAIN USING A MUCH HIGHER STANDARD OF

24   PROOF, PROOF BEYOND A REASONABLE DOUBT.

25            AS MEMBERS OF THE GRAND JURY, YOU, IN A VERY REAL

PDF created with pdfFactory trial version www.pdffactory.com

6

1    SENSE, STAND BETWEEN THE GOVERNMENT AND THE ACCUSED.  IT'S

2    YOUR DUTY TO SEE THAT INDICTMENTS ARE RETURNED ONLY AGAINST

3    THOSE WHOM YOU FIND PROBABLE CAUSE TO BELIEVE ARE GUILTY AND

4    TO SEE TO IT THAT THE INNOCENT ARE NOT COMPELLED TO GO TO

5    TRIAL OR EVEN COMPELLED TO FACE AN ACCUSATION.

6          IF A MEMBER OF THE GRAND JURY IS RELATED BY BLOOD OR

7    MARRIAGE OR KNOWS OR SOCIALIZES TO SUCH AN EXTENT AS TO FIND

8    HIMSELF OR HERSELF IN A BIASED STATE OF MIND AS TO THE PERSON

9    UNDER INVESTIGATION OR ALTERNATIVELY YOU SHOULD FIND YOURSELF

10   BIASED FOR ANY REASON, THEN THAT PERSON SHOULD NOT PARTICIPATE

11   IN THE INVESTIGATION UNDER QUESTION OR RETURN THE

12   INDICTMENT.

13         ONE OF OUR GRAND JURORS, MS. GARFIELD, HAS RELATIVES

14   THAT -- OBVIOUSLY, MS. GARFIELD, IF YOUR SON OR YOUR HUSBAND

15   WAS EVER CALLED IN FRONT OF THE GRAND JURY, THAT WOULD BE A

16   CASE WHERE YOU WOULD SAY, "THIS IS JUST TOO CLOSE.  I'M GOING

17   TO RECUSE MYSELF FROM THIS PARTICULAR CASE.  NO ONE WOULD

18   IMAGINE THAT I COULD BE ABSOLUTELY IMPARTIAL WHEN IT COMES TO

19   MY OWN BLOOD RELATIVES."

20         SO THOSE ARE THE KINDS OF SITUATIONS THAT I REFER TO

21   WHEN I TALK ABOUT EXCUSING YOURSELF FROM A PARTICULAR GRAND

22   JURY DELIBERATION.  IF THAT HAPPENS, YOU SHOULD INDICATE TO

23   THE FOREPERSON OF THE GRAND JURY, WITHOUT GOING INTO DETAIL,

24   FOR WHATEVER REASON, THAT YOU WANT TO BE EXCUSED FROM GRAND

25   JURY DELIBERATIONS ON A PARTICULAR CASE OR CONSIDERATION OF A

PDF created with pdfFactory trial version www.pdffactory.com

7

1    PARTICULAR MATTER IN WHICH YOU FEEL YOU'RE BIASED OR YOU MAY

2    HAVE A CONFLICT.

3         THIS DOES NOT MEAN THAT IF YOU HAVE AN OPPORTUNITY,

4    YOU SHOULD NOT PARTICIPATE IN AN INVESTIGATION.  HOWEVER, IT

5    DOES MEAN THAT IF YOU HAVE A FIXED STATE OF MIND BEFORE YOU

6    HEAR EVIDENCE EITHER ON THE BASIS OF FRIENDSHIP OR BECAUSE YOU

7    HATE SOMEBODY OR HAVE SIMILAR MOTIVATION, THEN YOU SHOULD STEP

8    ASIDE AND NOT PARTICIPATE IN THAT PARTICULAR GRAND JURY

9    INVESTIGATION AND IN VOTING ON THE PROPOSED INDICTMENT.  THIS

10   IS WHAT I MEANT WHEN I TALKED TO YOU ABOUT BEING FAIR-MINDED.

11        ALTHOUGH THE GRAND JURY HAS EXTENSIVE POWERS,

12   THEY'RE LIMITED IN SOME IMPORTANT RESPECTS.

13        FIRST, THESE ARE THE LIMITATIONS ON YOUR SERVICE:

14   YOU CAN ONLY INVESTIGATE CONDUCT THAT VIOLATES THE FEDERAL

15   CRIMINAL LAWS.  THAT'S YOUR CHARGE AS FEDERAL GRAND JURORS, TO

16   LOOK AT VIOLATIONS OR SUSPECTED VIOLATIONS OF FEDERAL CRIMINAL

17   LAW.

18        YOU ARE A FEDERAL GRAND JURY, AND CRIMINAL ACTIVITY

19   WHICH VIOLATES STATE LAW, THE LAWS OF THE STATE OF CALIFORNIA,

20   IS OUTSIDE OF YOUR INQUIRY.  IT MAY HAPPEN AND FREQUENTLY DOES

21   HAPPEN THAT SOME OF THE CONDUCT THAT'S UNDER INVESTIGATION BY

22   THE FEDERAL GRAND JURY ALSO VIOLATES STATE LAW.  AND THIS IS

23   FINE.  THAT'S PROPER.  BUT THERE ALWAYS HAS TO BE SOME FEDERAL

24   CONNECTION TO WHAT IS UNDER INVESTIGATION OR YOU HAVE NO

25   JURISDICTION.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1        THERE'S ALSO A GEOGRAPHIC LIMITATION ON THE SCOPE OF

2    YOUR INQUIRIES AND THE EXERCISE OF YOUR POWERS.  YOU MAY

3    INQUIRE ONLY INTO FEDERAL OFFENSES COMMITTED IN OUR FEDERAL

4    DISTRICT, WHICH INCLUDES SAN DIEGO AND IMPERIAL COUNTIES; THAT

5    IS, THE SOUTHERN DISTRICT OF CALIFORNIA.

6        YOU MAY HAVE CASES THAT IMPLICATE ACTIVITIES IN

7    OTHER AREAS, OTHER DISTRICTS, AND THERE MAY BE SOME EVIDENCE

8    OF CRIMINAL ACTIVITY IN CONJUNCTION WITH WHAT GOES ON HERE

9    THAT'S ALSO HAPPENING ELSEWHERE.  THERE ALWAYS HAS TO BE A

10   CONNECTION TO OUR DISTRICT.

11       THROUGHOUT THE UNITED STATES, WE HAVE 93 DISTRICTS

12   NOW.  THE STATES ARE CUT UP LIKE PIECES OF PIE, AND EACH

13   DISTRICT IS SEPARATELY DENOMINATED, AND EACH DISTRICT HAS

14   RESPONSIBILITY FOR THEIR OWN COUNTIES AND GEOGRAPHY.  AND YOU,

15   TOO, ARE BOUND BY THAT LIMITATION.

16       I'VE GONE OVER THIS WITH A COUPLE OF PEOPLE.  YOU

17   UNDERSTOOD FROM THE QUESTIONS AND ANSWERS THAT A COUPLE OF

18   PEOPLE WERE EXCUSED, I THINK THREE IN THIS CASE, BECAUSE THEY

19   COULD NOT ADHERE TO THE PRINCIPLE THAT I'M ABOUT TO TELL YOU.

20       BUT IT'S NOT FOR YOU TO JUDGE THE WISDOM OF THE

21   CRIMINAL LAWS ENACTED BY CONGRESS; THAT IS, WHETHER OR NOT

22   THERE SHOULD BE A FEDERAL LAW OR SHOULD NOT BE A FEDERAL LAW

23   DESIGNATING CERTAIN ACTIVITY IS CRIMINAL IS NOT UP TO YOU.

24   THAT'S A JUDGMENT THAT CONGRESS MAKES.

25       AND IF YOU DISAGREE WITH THAT JUDGMENT MADE BY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

9

1    CONGRESS, THEN YOUR OPTION IS NOT TO SAY "WELL, I'M GOING TO

2    VOTE AGAINST INDICTING EVEN THOUGH I THINK THAT THE EVIDENCE

3    IS SUFFICIENT" OR "I'M GOING TO VOTE IN FAVOR OF EVEN THOUGH

4    THE EVIDENCE MAY BE INSUFFICIENT."  INSTEAD, YOUR OBLIGATION

5    IS TO CONTACT YOUR CONGRESSMAN OR ADVOCATE FOR A CHANGE IN THE

6    LAWS, BUT NOT TO BRING YOUR PERSONAL DEFINITION OF WHAT THE

7    LAW OUGHT TO BE AND TRY TO IMPOSE THAT THROUGH APPLYING IT IN

8    A GRAND JURY SETTING.

9            FURTHERMORE, WHEN YOU'RE DECIDING WHETHER TO INDICT

10   OR NOT TO INDICT, YOU SHOULDN'T BE CONCERNED WITH PUNISHMENT

11   THAT ATTACHES TO THE CHARGE.  I THINK I ALSO ALLUDED TO THIS

12   IN THE CONVERSATION WITH ONE GENTLEMAN.  JUDGES ALONE

13   DETERMINE PUNISHMENT.  WE TELL TRIAL JURIES IN CRIMINAL CASES

14   THAT THEY'RE NOT TO BE CONCERNED WITH THE MATTER OF PUNISHMENT

15   EITHER.  YOUR OBLIGATION AT THE END OF THE DAY IS TO MAKE A

16   BUSINESS-LIKE DECISION ON FACTS AND APPLY THOSE FACTS TO THE

17   LAW AS IT'S EXPLAINED AND READ TO YOU.

18           THE CASES WHICH YOU'LL APPEAR WILL COME BEFORE YOU

19   IN VARIOUS WAYS.  FREQUENTLY, PEOPLE ARE ARRESTED DURING OR

20   SHORTLY AFTER THE COMMISSION OF AN ALLEGED CRIME.  AND THEN

21   THEY'RE TAKEN BEFORE A MAGISTRATE JUDGE, WHO HOLDS A

22   PRELIMINARY HEARING TO DETERMINE WHETHER INITIALLY THERE'S

23   PROBABLE CAUSE TO BELIEVE A PERSON'S COMMITTED A CRIME.

24           ONCE THE MAGISTRATE JUDGE FINDS PROBABLE CAUSE, HE

25   OR SHE WILL DIRECT THAT THE ACCUSED PERSON BE HELD FOR ACTION

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

10

1    BY THE GRAND JURY.  REMEMBER, UNDER OUR SYSTEM AND THE 5TH

2    AMENDMENT, TRIALS OF SERIOUS AND INFAMOUS CRIMES CAN ONLY

3    PROCEED WITH GRAND JURY ACTION.  SO THE DETERMINATION OF THE

4    MAGISTRATE JUDGE IS JUST TO HOLD THE PERSON UNTIL THE GRAND

5    JURY CAN ACT.  IT TAKES YOUR ACTION AS A GRAND JURY BEFORE THE

6    CASE CAN FORMALLY GO FORWARD.  IT'S AT THAT POINT THAT YOU'LL

7    BE CALLED UPON TO CONSIDER WHETHER AN INDICTMENT SHOULD BE

8    RETURNED IN A GIVEN CASE.

9            OTHER CASES MAY BE BROUGHT TO YOU BY THE UNITED

10   STATES ATTORNEY OR AN ASSISTANT UNITED STATES ATTORNEY BEFORE

11   AN ARREST IS MADE.  BUT DURING THE COURSE OF AN INVESTIGATION

12   OR AFTER AN INVESTIGATION HAS BEEN CONDUCTED, THERE'S TWO WAYS

13   THAT CASES GENERALLY ENTER THE CRIMINAL JUSTICE PROCESS:  THE

14   REACTIVE OFFENSES WHERE, AS THE NAME IMPLIES, THE POLICE REACT

15   TO A CRIME AND ARREST SOMEBODY.  AND THOSE CASES WILL THEN BE

16   SUBMITTED TO YOU AFTER MUCH OF THE FACTS ARE KNOWN.  AND THEN

17   THERE'S PROACTIVE CASES, CASES WHERE MAYBE THERE'S A SUSPICION

18   OR A HUNCH OF WRONGDOING.  THE FBI MAY BE CALLED UPON TO

19   INVESTIGATE OR SOME OTHER FEDERAL AGENCY, AND THEY MAY NEED

20   THE ASSISTANCE OF THE GRAND JURY IN FACILITATING THAT

21   INVESTIGATION.

22           THE GRAND JURY HAS BROAD INVESTIGATORY POWERS.  YOU

23   HAVE THE POWER TO ISSUE SUBPOENAS, FOR EXAMPLE, FOR RECORDS OR

24   FOR PEOPLE TO APPEAR.  SOMETIMES IT HAPPENS THAT PEOPLE SAY "I

25   DON'T HAVE TO TALK TO YOU" TO THE FBI, AND THEY REFUSE TO TALK

PDF created with pdfFactory trial version www.pdffactory.com

11

1    TO THE AUTHORITIES.  UNDER THOSE CIRCUMSTANCES, ON OCCASION,

2    THE FBI MAY GO TO THE U.S. ATTORNEY AND SAY, "LOOK, YOU NEED

3    TO FIND OUT WHAT HAPPENED HERE.  SUMMON THIS PERSON IN FRONT

4    OF THE GRAND JURY."  SO IT MAY BE THAT YOU'RE CALLED UPON TO

5    EVALUATE WHETHER A CRIME OCCURRED AND WHETHER THERE OUGHT TO

6    BE AN INDICTMENT.  YOU, IN A VERY REAL SENSE, ARE PART OF THE

7    INVESTIGATION.

8            IT MAY HAPPEN THAT DURING THE COURSE OF AN

9    INVESTIGATION INTO ONE CRIME, IT TURNS OUT THAT THERE IS

10   EVIDENCE OF A DIFFERENT CRIME THAT SURFACES.  YOU, AS GRAND

11   JURORS, HAVE A RIGHT TO PURSUE THE NEW CRIME THAT YOU

12   INVESTIGATE, EVEN CALLING NEW WITNESSES AND SEEKING OTHER

13   DOCUMENTS OR PAPERS OR EVIDENCE BE SUBPOENAED.

14           NOW, IN THAT REGARD, THERE'S A CLOSE ASSOCIATION

15   BETWEEN THE GRAND JURY AND THE U.S. ATTORNEY'S OFFICE AND THE

16   INVESTIGATIVE AGENCIES OF THE FEDERAL GOVERNMENT.  UNLIKE THE

17   U.S. ATTORNEY'S OFFICE OR THOSE INVESTIGATIVE AGENCIES, THE

18   GRAND JURY DOESN'T HAVE ANY POWER TO EMPLOY INVESTIGATORS OR

19   TO EXPEND FEDERAL FUNDS FOR INVESTIGATIVE PURPOSES.

20           INSTEAD, YOU MUST GO BACK TO THE U.S. ATTORNEY AND

21   ASK THAT THOSE THINGS BE DONE.  YOU'LL WORK CLOSELY WITH THE

22   U.S. ATTORNEY'S OFFICE IN YOUR INVESTIGATION OF CASES.  IF ONE

23   OR MORE GRAND JURORS WANT TO HEAR ADDITIONAL EVIDENCE ON A

24   CASE OR THINK THAT SOME ASPECT OF THE CASE OUGHT TO BE

25   PURSUED, YOU MAY MAKE THAT REQUEST TO THE U.S. ATTORNEY.

PDF created with pdfFactory trial version www.pdffactory.com

12

1        IF THE U.S. ATTORNEY REFUSES TO ASSIST YOU OR IF YOU

2   BELIEVE THAT THE U.S. ATTORNEY IS NOT ACTING IMPARTIALLY, THEN

3   YOU CAN TAKE THE MATTER UP WITH ME.  I'M THE ASSIGNED JURY

4   JUDGE, AND I WILL BE THE LIAISON WITH THE GRAND JURIES.

5        YOU CAN USE YOUR POWER TO INVESTIGATE EVEN OVER THE

6   ACTIVE OPPOSITION OF THE UNITED STATES ATTORNEY.  IF THE

7   MAJORITY OF YOU ON THE GRAND JURY THINK THAT A SUBJECT OUGHT

8   TO BE PURSUED AND THE U.S. ATTORNEY THINKS NOT, THEN YOUR

9   DECISION TRUMPS, AND YOU HAVE THE RIGHT TO HAVE THAT

10  INVESTIGATION PURSUED IF YOU BELIEVE IT'S NECESSARY TO DO SO

11  IN THE INTEREST OF JUSTICE.

12       I MENTION THESE THINGS TO YOU AS A THEORETICAL

13  POSSIBILITY.  THE TRUTH OF THE MATTER IS IN MY EXPERIENCE HERE

14  IN THE OVER 20 YEARS IN THIS COURT, THAT KIND OF TENSION DOES

15  NOT EXIST ON A REGULAR BASIS, THAT I CAN RECALL, BETWEEN THE

16  U.S. ATTORNEY AND GRAND JURIES.  THEY GENERALLY WORK TOGETHER.

17  THE U.S. ATTORNEY IS GENERALLY DEFERENTIAL TO THE GRAND JURY

18  AND WHAT THE GRAND JURY WANTS.

19       IT'S IMPORTANT TO KEEP IN MIND THAT YOU WILL AND DO

20  HAVE AN INVESTIGATORY FUNCTION AND THAT THAT FUNCTION IS

21  PARAMOUNT TO EVEN WHAT THE U.S. ATTORNEY MAY WANT YOU TO DO.

22       IF YOU, AS I SAID, BELIEVE THAT AN INVESTIGATION

23  OUGHT TO GO INTO OTHER AREAS BOTH IN TERMS OF SUBJECT MATTER,

24  BEING A FEDERAL CRIME, AND GEOGRAPHICALLY, THEN YOU AS A GROUP

25  CAN MAKE THAT DETERMINATION AND DIRECT THE INVESTIGATION THAT

PDF created with pdfFactory trial version www.pdffactory.com

13

1    WAY.

2          SINCE THE UNITED STATES ATTORNEY HAS THE DUTY OF

3    PROSECUTING PERSONS CHARGED WITH THE COMMISSION OF FEDERAL

4    CRIMES, SHE OR ONE OF HER ASSISTANTS -- BY THE WAY, THE U.S.

5    ATTORNEY IN OUR DISTRICT IS MS. CAROL LAM -- SHE OR ONE OF HER

6    ASSISTANTS WILL PRESENT THE MATTERS WHICH THE GOVERNMENT HAS

7    DESIRES TO HAVE YOU CONSIDER.  THE ATTORNEY WILL EDUCATE YOU

8    ON THE LAW THAT APPLIES BY READING THE LAW TO YOU OR POINTING

9    IT OUT, THE LAW THAT THE GOVERNMENT BELIEVES WAS VIOLATED.

10   THE ATTORNEY WILL SUBPOENA FOR TESTIMONY BEFORE YOU SUCH

11   WITNESSES AS THE LAWYER THINKS ARE IMPORTANT AND NECESSARY TO

12   ESTABLISH PROBABLE CAUSE AND ALLOW YOU TO DO YOUR FUNCTION,

13   AND ALSO ANY OTHER WITNESSES THAT YOU MAY REQUEST THE ATTORNEY

14   TO CALL IN RELATION TO THE SUBJECT MATTER UNDER INVESTIGATION.

15          REMEMBER THAT THE DIFFERENCE BETWEEN THE GRAND JURY

16   FUNCTION AND THAT OF THE TRIAL JURY IS THAT YOU ARE NOT

17   PRESIDING IN A FULL-BLOWN TRIAL.  IN MOST OF THE CASES THAT

18   YOU APPEAR, THE LAWYER FOR THE GOVERNMENT IS NOT GOING TO

19   BRING IN EVERYBODY THAT MIGHT BE BROUGHT IN AT THE TIME OF

20   TRIAL; THAT IS, EVERYBODY THAT HAS SOME RELEVANT EVIDENCE TO

21   OFFER.  THEY'RE NOT GOING TO BRING IN EVERYONE WHO CONCEIVABLY

22   COULD SAY SOMETHING THAT MIGHT BEAR ON THE OUTCOME.  THEY'RE

23   PROBABLY GOING TO BRING IN A LIMITED NUMBER OF WITNESSES JUST

24   TO ESTABLISH PROBABLE CAUSE.  OFTENTIMES, THEY PRESENT A

25   SKELETON CASE.  IT'S EFFICIENT.  IT'S ALL THAT'S NECESSARY.

PDF created with pdfFactory trial version www.pdffactory.com

14

1    IT SAVES TIME AND RESOURCES.

2          WHEN YOU ARE PRESENTED WITH A CASE, IT WILL TAKE 16

3    OF YOUR NUMBER OUT OF THE 23, 16 MEMBERS OF THE GRAND JURY OUT

4    OF THE 23, TO CONSTITUTE A QUORUM.  YOU CAN'T DO BUSINESS

5    UNLESS THERE'S AT LEAST 16 MEMBERS OF THE GRAND JURY PRESENT

6    FOR THE TRANSACTION OF ANY BUSINESS.  IF FEWER THAN 16 GRAND

7    JURORS ARE PRESENT EVEN FOR A MOMENT, THEN THE PROCEEDINGS OF

8    THE GRAND JURY MUST STOP.  YOU CAN NEVER OPERATE WITHOUT A

9    QUORUM OF AT LEAST 16 MEMBERS PRESENT.

10         NOW, THE EVIDENCE THAT YOU WILL HEAR NORMALLY WILL

11   CONSIST OF TESTIMONY OF WITNESSES AND WRITTEN DOCUMENTS.  YOU

12   MAY GET PHOTOGRAPHS.  THE WITNESSES WILL APPEAR IN FRONT OF

13   YOU SEPARATELY.  WHEN A WITNESS FIRST APPEARS BEFORE YOU, THE

14   GRAND JURY FOREPERSON WILL ADMINISTER AN OATH.  THE PERSON

15   MUST SWEAR OR AFFIRM TO TELL THE TRUTH.  AND AFTER THAT'S BEEN

16   ACCOMPLISHED, THE WITNESS WILL BE QUESTIONED.

17         ORDINARILY, THE U.S. ATTORNEY PRESIDING AT THE --

18   REPRESENTING THE U.S. GOVERNMENT AT THE GRAND JURY SESSION

19   WILL ASK THE QUESTIONS FIRST.  THEN THE FOREPERSON OF THE

20   GRAND JURY MAY ASK QUESTIONS, AND OTHER MEMBERS OF THE GRAND

21   JURY MAY ASK QUESTIONS, ALSO.

22         I USED TO APPEAR IN FRONT OF THE GRAND JURY.  I'LL

23   TELL YOU WHAT I WOULD DO IS FREQUENTLY I'D ASK THE QUESTIONS,

24   AND THEN I'D SEND THE WITNESS OUT AND ASK THE GRAND JURORS IF

25   THERE WERE ANY QUESTIONS THEY WANTED ME TO ASK.  AND THE

PDF created with pdfFactory trial version www.pdffactory.com

1    REASON I DID THAT IS THAT I HAD THE LEGAL TRAINING TO KNOW

2    WHAT WAS RELEVANT AND WHAT MIGHT BE PREJUDICIAL TO THE

3    DETERMINATION OF WHETHER THERE WAS PROBABLE CAUSE.

4            A LOT OF TIMES PEOPLE WILL SAY, "WELL, HAS THIS

5    PERSON EVER DONE IT BEFORE?"  AND WHILE THAT MAY BE A RELEVANT

6    QUESTION, ON THE ISSUE OF PROBABLE CAUSE, IT HAS TO BE

7    ASSESSED ON A CASE-BY-CASE BASIS.  IN OTHER WORDS, THE

8    EVIDENCE OF THIS OCCASION OF CRIME THAT'S ALLEGED MUST BE

9    ADEQUATE WITHOUT REGARD TO WHAT THE PERSON HAS DONE IN THE

10   PAST.  I WOULDN'T WANT THAT QUESTION ANSWERED UNTIL AFTER THE

11   GRAND JURY HAD MADE A DETERMINATION OF WHETHER THERE WAS

12   ENOUGH EVIDENCE.

13           SO WHEN I APPEARED IN FRONT OF THE GRAND JURY, I'D

14   TELL THEM "YOU'LL GET YOUR QUESTION ANSWERED, BUT I'D LIKE YOU

15   TO VOTE ON THE INDICTMENT FIRST.  I'D LIKE YOU TO DETERMINE

16   WHETHER THERE'S ENOUGH EVIDENCE BASED ON WHAT'S BEEN

17   PRESENTED, AND THEN WE'LL ANSWER IT."  I DIDN'T WANT TO

18   PREJUDICE THE GRAND JURY.  THERE MAY BE SIMILAR CONCERNS THAT

19   COME UP.  NOW, THE PRACTICES VARY AMONG THE ASSISTANT U.S.

20   ATTORNEYS THAT WILL APPEAR IN FRONT OF YOU.

21           ON OTHER OCCASIONS WHEN I DIDN'T THINK THERE WAS ANY

22   RISK THAT MIGHT PREJUDICE THE PROCESS, I WOULD ALLOW THE GRAND

23   JURY TO FOLLOW UP THEMSELVES AND ASK QUESTIONS.  A LOT OF

24   TIMES, THE FOLLOW-UPS ARE FACTUAL ON DETAILED MATTERS.  THAT

25   PRACTICE WILL VARY DEPENDING ON WHO IS REPRESENTING THE UNITED

PDF created with pdfFactory trial version www.pdffactory.com

16

1  STATES AND PRESENTING THE CASE TO YOU.  THE POINT IS YOU HAVE

2  THE RIGHT TO ASK ADDITIONAL QUESTIONS OR TO ASK THAT THOSE

3  QUESTIONS BE PUT TO THE WITNESS.

4          IN THE EVENT A WITNESS DOESN'T SPEAK OR UNDERSTAND

5  ENGLISH, THEN ANOTHER PERSON WILL BE BROUGHT INTO THE ROOM.

6  OBVIOUSLY, THAT WOULD BE AN INTERPRETER TO ALLOW YOU TO

7  UNDERSTAND THE ANSWERS.  WHEN WITNESSES DO APPEAR IN FRONT OF

8  THE GRAND JURY, THEY SHOULD BE TREATED COURTEOUSLY.  QUESTIONS

9  SHOULD BE PUT TO THEM IN AN ORDERLY FASHION.  THE QUESTIONS

10  SHOULD NOT BE HOSTILE.

11          IF YOU HAVE ANY DOUBT WHETHER IT'S PROPER TO ASK A

12  PARTICULAR QUESTION, THEN YOU CAN ASK THE U.S. ATTORNEY WHO'S

13  ASSISTING IN THE INVESTIGATION FOR ADVICE ON THE MATTER.  YOU

14  ALONE AS GRAND JURORS DECIDE HOW MANY WITNESSES YOU WANT TO

15  HEAR.  WITNESSES CAN BE SUBPOENAED FROM ANYWHERE IN THE

16  COUNTRY.  YOU HAVE NATIONAL JURISDICTION.

17          HOWEVER, PERSONS SHOULD NOT ORDINARILY BE SUBJECTED

18  TO DISRUPTION OF THEIR DAILY LIVES UNLESS THERE'S GOOD REASON.

19  THEY SHOULDN'T BE HARASSED OR ANNOYED OR INCONVENIENCED.

20  THAT'S NOT THE PURPOSE OF THE GRAND JURY HEARING, NOR SHOULD

21  PUBLIC FUNDS BE EXPENDED TO BRING WITNESSES UNLESS YOU BELIEVE

22  THAT THE WITNESSES CAN PROVIDE MEANINGFUL, RELEVANT EVIDENCE

23  WHICH WILL ASSIST IN YOUR DETERMINATIONS AND YOUR

24  INVESTIGATION.

25          ALL WITNESSES WHO ARE CALLED IN FRONT OF THE GRAND

PDF created with pdfFactory trial version www.pdffactory.com

17

1    JURY HAVE CERTAIN RIGHTS.  THESE INCLUDE, AMONG OTHERS, THE

2    RIGHT TO REFUSE TO ANSWER QUESTIONS ON THE GROUNDS THAT THE

3    ANSWER TO A QUESTION MIGHT INCRIMINATE THEM AND THE RIGHT TO

4    KNOW THAT ANYTHING THEY SAY MIGHT BE USED AGAINST THEM.

5            THE U.S. ATTORNEYS ARE CHARGED WITH THE OBLIGATION,

6    WHEN THEY'RE AWARE OF IT, OF ADVISING PEOPLE OF THIS RIGHT

7    BEFORE THEY QUESTION THEM.  BUT BEAR THAT IN MIND.

8            IF A WITNESS DOES EXERCISE THE RIGHT AGAINST

9    SELF-INCRIMINATION, THEN THE GRAND JURY SHOULD NOT HOLD THAT

10   AS ANY PREJUDICE OR BIAS AGAINST THAT WITNESS.  IT CAN PLAY NO

11   PART IN THE RETURN OF AN INDICTMENT AGAINST THE WITNESS.  IN

12   OTHER WORDS, THE MERE EXERCISE OF THE PRIVILEGE AGAINST

13   SELF-INCRIMINATION, WHICH ALL OF US HAVE AS UNITED STATES

14   RESIDENTS, SHOULD NOT FACTOR INTO YOUR DETERMINATION OF

15   WHETHER THERE'S PROBABLE CAUSE TO GO FORWARD IN THIS CASE.

16   YOU MUST RESPECT THAT DETERMINATION BY THE PERSON AND NOT USE

17   IT AGAINST THEM.

18           IT'S AN UNCOMMON SITUATION THAT YOU'LL FACE WHEN

19   SOMEBODY DOES CLAIM THE PRIVILEGE AGAINST SELF-INCRIMINATION.

20   THAT'S BECAUSE USUALLY AT THE TIME A PERSON IS SUBPOENAED, IF

21   THERE'S A PROSPECT THAT THEY'RE GOING TO CLAIM THE PRIVILEGE,

22   THE U.S. ATTORNEY IS PUT ON NOTICE OF THAT BEFOREHAND EITHER

23   BY THE PERSON HIMSELF OR HERSELF OR MAYBE A LAWYER

24   REPRESENTING THE PERSON.

25           IN MY EXPERIENCE, MOST OF THE TIME THE U.S. ATTORNEY

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WILL NOT THEN CALL THE PERSON IN FRONT OF YOU BECAUSE IT WOULD

2    BE TO NO EFFECT TO CALL THEM AND HAVE THEM ASSERT THEIR 5TH

3    AMENDMENT PRIVILEGE.  BUT IT SOMETIMES DOES COME UP.  IT

4    SOMETIMES HAPPENS.  SOMETIMES THERE'S A QUESTION OF WHETHER

5    THE PERSON HAS A BONA FIDE PRIVILEGE AGAINST

6    SELF-INCRIMINATION.  THAT'S A MATTER FOR THE COURT TO

7    DETERMINE IN ANCILLARY PROCEEDINGS.  OR THE U.S. ATTORNEY MAY

8    BE UNAWARE OF A PERSON'S INCLINATION TO ASSERT THE 5TH.  SO IT

9    MAY COME UP IN FRONT OF YOU.  IT DOESN'T ALWAYS COME UP.

10          AS I MENTIONED TO YOU IN MY PRELIMINARY REMARKS,

11    WITNESSES ARE NOT PERMITTED TO HAVE A LAWYER WITH THEM IN THE

12    GRAND JURY ROOM.  THE LAW DOESN'T PERMIT A WITNESS SUMMONED

13    BEFORE THE GRAND JURY TO BRING THE LAWYER WITH THEM, ALTHOUGH

14    WITNESSES DO HAVE A RIGHT TO CONFER WITH THEIR LAWYERS DURING

15    THE COURSE OF GRAND JURY INVESTIGATION PROVIDED THE CONFERENCE

16    OCCURS OUTSIDE THE GRAND JURY ROOM.

17          YOU MAY FACE A SITUATION WHERE A WITNESS SAYS "I'D

18    LIKE TO TALK TO MY LAWYER BEFORE I ANSWER THAT QUESTION," IN

19    WHICH CASE THE PERSON WOULD LEAVE THE ROOM, CONSULT WITH THE

20    LAWYER, AND THEN COME BACK INTO THE ROOM WHERE FURTHER ACTION

21    WOULD TAKE PLACE.

22          APPEARANCES BEFORE A GRAND JURY SOMETIMES PRESENT

23    COMPLEX LEGAL PROBLEMS THAT REQUIRE THE ASSISTANCE OF LAWYERS.

24    YOU'RE NOT TO DRAW ANY ADVERSE INFERENCE IF A WITNESS DOES ASK

25    TO LEAVE THE ROOM TO SPEAK TO HIS LAWYER OR HER LAWYER AND

PDF created with pdfFactory trial version www.pdffactory.com

19

1    THEN LEAVES FOR THAT PURPOSE.

2            ORDINARILY, NEITHER THE ACCUSED OR ANY WITNESS ON

3    THE ACCUSED'S BEHALF WILL TESTIFY IN THE GRAND JURY SESSION.

4    BUT UPON THE REQUEST OF AN ACCUSED, PREFERABLY IN WRITING, YOU

5    MAY AFFORD THE ACCUSED AN OPPORTUNITY TO APPEAR IN FRONT OF

6    YOU.

7            AS I'VE SAID, THESE PROCEEDINGS TEND TO BE ONE-SIDED

8    NECESSARILY.  THE PROSECUTOR IS ASKING YOU TO RETURN AN

9    INDICTMENT TO A CRIMINAL CHARGE, AND THEY'LL MUSTER THE

10   EVIDENCE THAT THEY HAVE THAT THEY BELIEVE SUPPORTS PROBABLE

11   CAUSE AND PRESENT THAT TO YOU.  BECAUSE IT'S NOT A FULL-BLOWN

12   TRIAL, YOU'RE LIKELY IN MOST CASES NOT TO HEAR THE OTHER SIDE

13   OF THE STORY, IF THERE IS ANOTHER SIDE TO THE STORY.  THERE'S

14   NO PROVISION OF LAW THAT ALLOWS AN ACCUSED, FOR EXAMPLE, TO

15   CONTEST THE MATTER IN FRONT OF THE GRAND JURY.

16           IT MAY HAPPEN, AS I SAID, THAT AN ACCUSED MAY ASK TO

17   APPEAR IN FRONT OF YOU.  BECAUSE THE APPEARANCE OF SOMEONE

18   ACCUSED OF A CRIME MAY RAISE COMPLICATED LEGAL PROBLEMS, YOU

19   SHOULD SEEK THE U.S. ATTORNEY'S ADVICE AND COUNSEL, IF

20   NECESSARY, AND THAT OF THE COURT BEFORE ALLOWING THAT.

21           BEFORE ANY ACCUSED PERSON IS ALLOWED TO TESTIFY,

22   THEY MUST BE ADVISED OF THEIR RIGHTS, AND YOU SHOULD BE

23   COMPLETELY SATISFIED THAT THEY UNDERSTAND WHAT THEY'RE DOING.

24           YOU'RE NOT REQUIRED TO SUMMON WITNESSES WHICH AN

25   ACCUSED PERSON MAY WANT YOU TO HAVE EXAMINED UNLESS PROBABLE

PDF created with pdfFactory trial version www.pdffactory.com

1    CAUSE FOR AN INDICTMENT MAY BE EXPLAINED AWAY BY THE TESTIMONY

2    OF THOSE WITNESSES.

3           NOW, AGAIN, THIS EMPHASIZES THE DIFFERENCE BETWEEN

4    THE FUNCTION OF THE GRAND JURY AND THE TRIAL JURY.  YOU'RE ALL

5    ABOUT PROBABLE CAUSE.  IF YOU THINK THAT THERE'S EVIDENCE OUT

6    THERE THAT MIGHT CAUSE YOU TO SAY "WELL, I DON'T THINK

7    PROBABLE CAUSE EXISTS," THEN IT'S INCUMBENT UPON YOU TO HEAR

8    THAT EVIDENCE AS WELL.  AS I TOLD YOU, IN MOST INSTANCES, THE

9    U.S. ATTORNEYS ARE DUTY-BOUND TO PRESENT EVIDENCE THAT CUTS

10   AGAINST WHAT THEY MAY BE ASKING YOU TO DO IF THEY'RE AWARE OF

11   THAT EVIDENCE.

12          THE DETERMINATION OF WHETHER A WITNESS IS TELLING

13   THE TRUTH IS SOMETHING FOR YOU TO DECIDE.  NEITHER THE COURT

14   NOR THE PROSECUTORS NOR ANY OFFICERS OF THE COURT MAY MAKE

15   THAT DETERMINATION FOR YOU.  IT'S THE EXCLUSIVE PROVINCE OF

16   GRAND JURORS TO DETERMINE WHO IS CREDIBLE AND WHO MAY NOT BE.

17          FINALLY, LET ME TELL YOU THIS:  THERE'S ANOTHER

18   DIFFERENCE BETWEEN OUR GRAND JURY PROCEDURE HERE AND

19   PROCEDURES YOU MAY BE FAMILIAR WITH HAVING SERVED ON STATE

20   TRIAL JURIES OR FEDERAL TRIAL JURIES OR EVEN ON THE STATE

21   GRAND JURY; HEARSAY TESTIMONY, THAT IS, TESTIMONY AS TO FACTS

22   NOT PERSONALLY KNOWN BY THE WITNESS, BUT WHICH THE WITNESS HAS

23   BEEN TOLD OR RELATED BY OTHER PERSONS MAY BE DEEMED BY YOU

24   PERSUASIVE AND MAY PROVIDE A BASIS FOR RETURNING AN INDICTMENT

25   AGAINST AN ACCUSED.

PDF created with pdfFactory trial version www.pdffactory.com

21

1        WHAT I MEAN BY THAT IS IF IT'S A FULL-BLOWN TRIAL

2    WHERE THE RULES OF EVIDENCE APPLY -- AND ALL OF US ARE

3    FAMILIAR WITH THIS TERM "HEARSAY EVIDENCE."  GENERALLY, IT

4    FORBIDS SOMEBODY FROM REPEATING WHAT SOMEONE ELSE TOLD THEM

5    OUTSIDE OF COURT.  OH, THERE'S A MILLION EXCEPTIONS TO THE

6    HEARSAY RULE, BUT THAT'S THE GIST OF THE RULE.

7        USUALLY, WE INSIST ON THE SPEAKER OF THE WORDS TO

8    COME IN SO THAT WE CAN KNOW THE CONTEXT OF IT.  THAT RULE

9    DOESN'T APPLY IN THE GRAND JURY CONTEXT.  BECAUSE IT'S A

10   PRELIMINARY PROCEEDING, BECAUSE ULTIMATELY GUILT OR INNOCENCE

11   IS NOT BEING DETERMINED, THE EVIDENTIARY STANDARDS ARE

12   RELAXED.  THE PROSECUTORS ARE ENTITLED TO PUT ON HEARSAY

13   EVIDENCE.

14       HOW DOES THAT PLAY OUT IN REAL LIFE?  WELL, YOU'RE

15   GOING TO BE HEARING A LOT OF BORDER TYPE CASES.  IT DOESN'T

16   MAKE SENSE, IT'S NOT EFFICIENT, IT'S NOT COST-EFFECTIVE TO

17   PULL ALL OF OUR BORDER GUARDS OFF THE BORDER TO COME UP AND

18   TESTIFY.  WHO IS LEFT GUARDING THE BORDER, THEN?

19       WHAT THEY'VE DONE IN THE BORDER CASES IN PARTICULAR

20   IF THEY USUALLY HAVE A SUMMARY WITNESS; A WITNESS FROM, FOR

21   EXAMPLE, BORDER PATROL OR CUSTOMS WHO WILL TALK TO THE PEOPLE

22   OR READ THE REPORTS OF THE PEOPLE WHO ACTUALLY MADE THE

23   ARREST.  THAT PERSON WILL COME IN AND TESTIFY ABOUT WHAT

24   HAPPENED.  THE PERSON WON'T HAVE FIRST-HAND KNOWLEDGE, BUT

25   THEY'LL BE RELIABLY INFORMED BY THE PERSON WITH FIRST-HAND

PDF created with pdfFactory trial version www.pdffactory.com

22

1    KNOWLEDGE OF WHAT OCCURRED, AND THEY'LL BE THE WITNESS BEFORE

2    THE GRAND JURY.

3            YOU SHOULD EXPECT AND COUNT ON THE FACT THAT YOU'RE

4    GOING TO HEAR EVIDENCE IN THE FORM OF HEARSAY THAT WOULD NOT

5    BE ADMISSIBLE IF THE CASE GOES FORWARD TO TRIAL, BUT IS

6    ADMISSIBLE AT THE GRAND JURY STAGE.

7            AFTER YOU'VE HEARD ALL OF THE EVIDENCE THAT THE U.S.

8    ATTORNEY INTENDS TO PRESENT OR THAT YOU WANT TO HEAR IN A

9    PARTICULAR MATTER, YOU'RE THEN CHARGED WITH THE OBLIGATION OF

10   DELIBERATING TO DETERMINE WHETHER THE ACCUSED PERSON OUGHT TO

11   BE INDICTED.  NO ONE OTHER THAN YOUR OWN MEMBERS, THE MEMBERS

12   OF THE GRAND JURY, IS TO BE PRESENT IN THE GRAND JURY ROOM

13   WHILE YOU'RE DELIBERATING.

14           WHAT THAT MEANS IS THE COURT REPORTER, THE ASSISTANT

15   U.S. ATTORNEY, ANYONE ELSE, THE INTERPRETER WHO MAY HAVE BEEN

16   PRESENT TO INTERPRET FOR A WITNESS, MUST GO OUT OF THE ROOM,

17   AND THE PROCEEDING MUST GO FORWARD WITH ONLY GRAND JURORS

18   PRESENT DURING THE DELIBERATION AND VOTING ON AN INDICTMENT.

19           YOU HEARD ME EXPLAIN EARLIER THAT AT VARIOUS TIMES

20   DURING THE PRESENTATION OF MATTERS BEFORE YOU, OTHER PEOPLE

21   MAY BE PRESENT IN THE GRAND JURY.  THIS IS PERFECTLY

22   ACCEPTABLE.  THE RULE THAT I HAVE JUST READ TO YOU ABOUT YOUR

23   PRESENCE ALONE IN THE GRAND JURY ROOM APPLIES ONLY DURING

24   DELIBERATION AND VOTING ON INDICTMENTS.

25           TO RETURN AN INDICTMENT CHARGING SOMEONE WITH AN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    OFFENSE, IT'S NOT NECESSARY, AS I MENTIONED MANY TIMES, THAT

2    YOU FIND PROOF BEYOND A REASONABLE DOUBT.  THAT'S THE TRIAL

3    STANDARD, NOT THE GRAND JURY STANDARD.  YOUR TASK IS TO

4    DETERMINE WHETHER THE GOVERNMENT'S EVIDENCE, AS PRESENTED TO

5    YOU, IS SUFFICIENT TO CONCLUDE THAT THERE'S PROBABLE CAUSE TO

6    BELIEVE THAT THE ACCUSED IS GUILTY OF THE PROPOSED OR CHARGED

7    OFFENSE.

8         I EXPLAINED TO YOU WHAT THAT STANDARD MEANS.  LET

9    ME, AT THE RISK OF BORING YOU, TELL YOU ONE MORE TIME.

10        PROBABLE CAUSE MEANS THAT YOU HAVE AN HONESTLY HELD

11   CONSCIENTIOUS BELIEF AND THAT THE BELIEF IS REASONABLE THAT A

12   FEDERAL CRIME WAS COMMITTED AND THAT THE PERSON TO BE INDICTED

13   WAS SOMEHOW ASSOCIATED WITH THE COMMISSION OF THAT CRIME.

14   EITHER THEY COMMITTED IT THEMSELVES OR THEY HELPED SOMEONE

15   COMMIT IT OR THEY WERE PART OF A CONSPIRACY, AN ILLEGAL

16   AGREEMENT, TO COMMIT THAT CRIME.

17        TO PUT IT ANOTHER WAY, YOU SHOULD VOTE TO INDICT

18   WHEN THE EVIDENCE PRESENTED TO YOU IS SUFFICIENTLY STRONG TO

19   WARRANT A REASONABLE PERSON TO BELIEVE THAT THE ACCUSED IS

20   PROBABLY GUILTY OF THE OFFENSE WHICH IS PROPOSED.

21        EACH GRAND JUROR HAS THE RIGHT TO EXPRESS VIEWS ON

22   THE MATTER UNDER CONSIDERATION.  AND ONLY AFTER ALL GRAND

23   JURORS HAVE BEEN GIVEN A FULL OPPORTUNITY TO BE HEARD SHOULD

24   YOU VOTE ON THE MATTER BEFORE YOU.  YOU MAY DECIDE AFTER

25   DELIBERATION AMONG YOURSELVES THAT YOU NEED MORE EVIDENCE,

PDF created with pdfFactory trial version www.pdffactory.com

24

1    THAT MORE EVIDENCE SHOULD BE CONSIDERED BEFORE A VOTE IS

2    TAKEN.  IN SUCH CASES, THE U.S ATTORNEY OR THE ASSISTANT U.S.

3    ATTORNEY CAN BE DIRECTED TO SUBPOENA ADDITIONAL DOCUMENTS OR

4    WITNESSES FOR YOU TO CONSIDER IN ORDER TO MAKE YOUR

5    DETERMINATION.

6         WHEN YOU'VE DECIDED TO VOTE, THE FOREPERSON SHOULD

7    KEEP A RECORD OF THE VOTE.  THAT RECORD SHOULD BE FILED WITH

8    THE CLERK OF THE COURT.  THE RECORD DOESN'T INCLUDE THE NAMES

9    OF THE JURORS OR HOW THEY VOTED, BUT ONLY THE NUMBER OF VOTES

10   FOR THE INDICTMENT.  SO IT'S AN ANONYMOUS VOTE.  YOU'LL KNOW

11   AMONG YOURSELVES WHO VOTED WHICH WAY, BUT THAT INFORMATION

12   DOES NOT GET CAPTURED OR RECORDED, JUST THE NUMBER OF PEOPLE

13   VOTING FOR INDICTMENT.

14        IF 12 OR MORE MEMBERS OF THE GRAND JURY AFTER

15   DELIBERATION BELIEVE THAT AN INDICTMENT IS WARRANTED, THEN

16   YOU'LL REQUEST THE UNITED STATES ATTORNEY TO PREPARE A FORMAL

17   WRITTEN INDICTMENT IF ONE'S NOT ALREADY BEEN PREPARED AND

18   PRESENTED TO YOU.  IN MY EXPERIENCE, MOST OF THE TIME THE U.S.

19   ATTORNEY WILL SHOW UP WITH THE WITNESSES AND WILL HAVE THE

20   PROPOSED INDICTMENT WITH THEM.  SO YOU'LL HAVE THAT TO

21   CONSIDER.  YOU'LL KNOW EXACTLY WHAT THE PROPOSED CHARGES ARE.

22        THE INDICTMENT WILL SET FORTH THE DATE AND THE PLACE

23   OF THE ALLEGED OFFENSE AND THE CIRCUMSTANCES THAT THE U.S.

24   ATTORNEY BELIEVES MAKES THE CONDUCT CRIMINAL.  IT WILL

25   IDENTIFY THE CRIMINAL STATUTES THAT HAVE ALLEGEDLY BEEN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

25

1    VIOLATED.

2            THE FOREPERSON, UPON THE GRAND JURY VOTING TO RETURN

3    THE INDICTMENT, WILL THEN ENDORSE OR SIGN THE INDICTMENT,

4    WHAT'S CALLED A TRUE BILL OF INDICTMENT.  THERE'S A SPACE

5    PROVIDED BY THE WORD -- OR FOLLOWED BY THE WORD "FOREPERSON."

6    THE FOREPERSON IS TO SIGN THE INDICTMENT IF THE GRAND JURY

7    BELIEVES THAT THERE'S PROBABLE CAUSE.  A TRUE BILL SIGNIFIES

8    THAT 12 OR MORE GRAND JURORS HAVE AGREED THAT THE CASE OUGHT

9    TO GO FORWARD WITH PROBABLE CAUSE TO BELIEVE THAT THE PERSON

10   PROPOSED FOR THE CHARGE IS GUILTY OF THE CRIME.

11           IT'S THE DUTY OF THE FOREPERSON TO ENDORSE OR SIGN

12   EVERY INDICTMENT VOTED ON BY AT LEAST 12 MEMBERS EVEN IF THE

13   FOREPERSON HAS VOTED AGAINST RETURNING THE INDICTMENT.  SO IF

14   YOU'VE BEEN DESIGNATED A FOREPERSON OR AN ASSISTANT

15   FOREPERSON, EVEN IF YOU VOTED THE OTHER WAY OR YOU'RE

16   OUT-VOTED, IF THERE'S AT LEAST 12 WHO VOTED FOR THE

17   INDICTMENT, THEN YOU MUST SIGN THE INDICTMENT.

18           IF YOU WERE THE 12 MEMBERS OF THE GRAND JURY WHO

19   VOTED IN FAVOR OF THE INDICTMENT, THEN THE FOREPERSON WILL

20   ENDORSE THE INDICTMENT WITH THESE WORDS:  "NOT A TRUE BILL."

21   THEY'LL RETURN IT TO THE COURT.  THE COURT WILL IMPOUND IT.

22           THE INDICTMENTS WHICH HAVE BEEN ENDORSED AS A TRUE

23   BILL ARE PRESENTED EITHER TO ONE OF OUR MAGISTRATE JUDGES OR

24   TO A DISTRICT JUDGE IN OPEN COURT BY YOUR FOREPERSON AT THE

25   CONCLUSION OF EACH SESSION OF THE GRAND JURY.  THIS IS THE

PDF created with pdfFactory trial version www.pdffactory.com

26

1    PROCEDURE THAT YOU HEARD ME ALLUDE TO.  IN THE ABSENCE OF THE

2    FOREPERSON, THE DEPUTY FOREPERSON SHALL PERFORM ALL THE

3    FUNCTIONS AND DUTIES OF THE FOREPERSON.

4          LET ME EMPHASIZE AGAIN IT'S EXTREMELY IMPORTANT FOR

5    THOSE OF YOU WHO ARE GRAND JURORS TO REALIZE THAT UNDER OUR

6    CONSTITUTION, THE GRAND JURY IS AN INDEPENDENT BODY.  IT'S

7    INDEPENDENT OF THE UNITED STATES ATTORNEY.  IT'S NOT AN ARM OR

8    AN AGENT OF FEDERAL BUREAU OF INVESTIGATION OF THE DRUG

9    ENFORCEMENT ADMINISTRATION, THE IRS, OR ANY OTHER GOVERNMENT

10   AGENCY CHARGED WITH PROSECUTING THE CRIME.

11         I USED THE CHARACTERIZATION EARLIER THAT YOU STAND

12   AS A BUFFER BETWEEN OUR GOVERNMENT'S ABILITY TO ACCUSE SOMEONE

13   OF A CRIME AND THEN PUTTING THAT PERSON THROUGH THE BURDEN OF

14   STANDING TRIAL.  YOU ACT AS AN INDEPENDENT BODY OF CITIZENS.

15         IN RECENT YEARS, THERE HAS BEEN CRITICISM OF THE

16   INSTITUTION OF THE GRAND JURY.  THE CRITICISM GENERALLY IS THE

17   GRAND JURY ACTS AS RUBBER STAMPS AND APPROVES PROSECUTIONS

18   THAT ARE BROUGHT BY THE GOVERNMENT WITHOUT THOUGHT.

19         INTERESTINGLY ENOUGH, IN MY DISCUSSION WITH

20   PROSPECTIVE GRAND JURORS, WE HAD ONE FELLOW WHO SAID, "YEAH,

21   THAT'S THE WAY I THINK IT OUGHT TO BE."  WELL, THAT'S NOT THE

22   WAY IT IS.  AS A PRACTICAL MATTER, YOU WILL WORK CLOSELY WITH

23   GOVERNMENT LAWYERS.  THE U.S. ATTORNEY AND THE ASSISTANT U.S.

24   ATTORNEYS WILL PROVIDE YOU WITH IMPORTANT SERVICES AND HELP

25   YOU FIND YOUR WAY WHEN YOU'RE CONFRONTED WITH COMPLEX LEGAL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

27

1    MATTERS.  IT'S ENTIRELY PROPER THAT YOU SHOULD RECEIVE THE

2    ASSISTANCE FROM THE GOVERNMENT LAWYERS.

3        BUT AT THE END OF THE DAY, THE DECISION ABOUT

4    WHETHER A CASE GOES FORWARD AND AN INDICTMENT SHOULD BE

5    RETURNED IS YOURS AND YOURS ALONE.  IF PAST EXPERIENCE IS ANY

6    INDICATION OF WHAT TO EXPECT IN THE FUTURE, THEN YOU CAN

7    EXPECT THAT THE U.S. ATTORNEYS THAT WILL APPEAR IN FRONT OF

8    YOU WILL BE CANDID, THEY'LL BE HONEST, THAT THEY'LL ACT IN

9    GOOD FAITH IN ALL MATTERS PRESENTED TO YOU.

10        HOWEVER, AS I SAID, ULTIMATELY YOU HAVE TO DEPEND ON

11    YOUR INDEPENDENT JUDGMENT IN MAKING THE DECISION THAT YOU ARE

12    CHARGED WITH MAKING AS GRAND JURORS.  YOU'RE NOT AN ARM OF THE

13    U.S. ATTORNEY'S OFFICE.  YOU'RE NOT AN ARM OF ANY GOVERNMENT

14    AGENCY.  THE GOVERNMENT'S LAWYERS ARE PROSECUTORS, AND YOU'RE

15    NOT.

16        IF THE FACTS SUGGEST TO YOU THAT YOU SHOULD NOT

17    INDICT, THEN YOU SHOULD NOT DO SO EVEN IN THE FACE OF

18    OPPOSITION OR STATEMENTS OR ARGUMENTS FROM ONE OF THE

19    ASSISTANT UNITED STATES ATTORNEYS.  YOU SHOULD NOT SURRENDER

20    AN HONESTLY OR CONSCIOUSLY HELD BELIEF WITHOUT THE WEIGHT OF

21    THE EVIDENCE AND SIMPLY DEFER TO THE U.S. ATTORNEY.  THAT'S

22    YOUR DECISION TO MAKE.

23        JUST AS YOU MUST MAINTAIN YOUR INDEPENDENCE IN YOUR

24    DEALINGS WITH GOVERNMENT LAWYERS, YOUR DEALINGS WITH THE COURT

25    MUST BE ON A FORMAL BASIS, ALSO.  IF YOU HAVE A QUESTION FOR

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

28

1    THE COURT OR A DESIRE TO MAKE A PRESENTMENT OR A RETURN OF AN

2    INDICTMENT TO THE COURT, THEN YOU MAY CONTACT ME THROUGH MY

3    CLERK.  YOU'LL BE ABLE TO ASSEMBLE IN THE COURTROOM OFTENTIMES

4    FOR THESE PURPOSES.

5         LET ME TELL YOU ALSO THAT EACH GRAND JUROR IS

6    DIRECTED TO REPORT IMMEDIATELY TO THE COURT ANY ATTEMPT BY

7    ANYBODY UNDER ANY PRETENSE WHATSOEVER TO ADDRESS YOU OR

8    CONTACT YOU FOR THE PURPOSE OF TRYING TO GAIN INFORMATION

9    ABOUT WHAT'S GOING ON IN FRONT OF THE GRAND JURY.  THAT SHOULD

10   NOT HAPPEN.  IF IT DOES HAPPEN, I SHOULD BE INFORMED OF THAT

11   IMMEDIATELY BY ANY OF YOU, COLLECTIVELY OR INDIVIDUALLY.  IF

12   ANY PERSON CONTACTS YOU OR ATTEMPTS TO INFLUENCE YOU IN ANY

13   MANNER IN CARRYING OUT YOUR DUTIES AS A GRAND JUROR, LET ME

14   KNOW ABOUT IT.

15        LET ME TALK A LITTLE BIT MORE ABOUT THE OBLIGATION

16   OF SECRECY, WHICH I'VE MENTIONED AND ALLUDED TO.  AS I TOLD

17   YOU BEFORE, THE HALLMARK OF THE GRAND JURY, PARTICULARLY OUR

18   FEDERAL GRAND JURY, IS THAT IT OPERATES SECRETLY.  IT OPERATES

19   IN SECRECY, AND ITS PROCEEDINGS ARE ENTIRELY SECRET.

20        YOUR PROCEEDINGS AS GRAND JURORS ARE ALWAYS SECRET,

21   AND THEY MUST REMAIN SECRET PERMANENTLY UNLESS AND UNTIL THE

22   COURT DETERMINES OTHERWISE.  YOU CAN'T RELATE TO YOUR FAMILY,

23   THE NEWS MEDIA, TELEVISION REPORTERS, OR TO ANYONE WHAT

24   HAPPENED IN FRONT OF THE GRAND JURY.  IN FACT, TO DO SO IS TO

25   COMMIT A CRIMINAL OFFENSE.  YOU COULD BE HELD CRIMINALLY

PDF created with pdfFactory trial version www.pdffactory.com

29

1    LIABLE FOR REVEALING WHAT OCCURRED IN FRONT OF THE GRAND JURY.

2           THERE ARE SEVERAL IMPORTANT REASONS WHY WE DEMAND

3    SECRECY IN THE INSTITUTION OF THE GRAND JURY.  FIRST -- AND I

4    MENTIONED THIS, AND THIS IS OBVIOUS -- THE PREMATURE

5    DISCLOSURE OF INFORMATION THAT THE GRAND JURY IS ACTING ON

6    COULD VERY WELL FRUSTRATE THE ENDS OF JUSTICE IN PARTICULAR

7    CASES.  IT MIGHT GIVE AN OPPORTUNITY FOR SOMEONE WHO'S ACCUSED

8    OF A CRIME TO ESCAPE OR BECOME A FUGITIVE OR TO DESTROY

9    EVIDENCE THAT MIGHT OTHERWISE BE UNCOVERED LATER ON.  YOU

10   DON'T WANT TO DO THAT.

11          IN THE COURSE OF AN INVESTIGATION, IT'S ABSOLUTELY

12   IMPERATIVE THAT THE INVESTIGATION AND THE FACTS OF THE

13   INVESTIGATION REMAIN SECRET, AND YOU SHOULD KEEP THAT FOREMOST

14   IN YOUR MIND.  ALSO, IF THE TESTIMONY OF A WITNESS IS

15   DISCLOSED, THE WITNESS MAY BE SUBJECT TO INTIMIDATION OR

16   SOMETIMES RETALIATION OR BODILY INJURY BEFORE THE WITNESS IS

17   ABLE TO TESTIFY.  IT IS SOMETHING THAT THE LAW ENFORCEMENT --

18   IT'S SOMETIMES THE CASE THAT LAW ENFORCEMENT WILL TELL A

19   WITNESS WHO IS COOPERATING WITH AN INVESTIGATION THAT THEIR

20   SECRECY IS GUARANTEED.  IT SOMETIMES TAKES THAT KIND OF

21   ASSURANCE FROM THE POLICE OR LAW ENFORCEMENT AGENTS TO GET A

22   WITNESS TO TELL WHAT THEY KNOW.  AND THAT GUARANTEE CAN ONLY

23   BE SECURED IF YOU MAINTAIN THE OBLIGATION OF SECRECY.

24          THE GRAND JURY IS FORBIDDEN BY LAW FROM DISCLOSING

25   ANY INFORMATION ABOUT THE GRAND JURY PROCESS WHATSOEVER.  IT'S

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   ON THE BASIS SOMETIMES OF REPRESENTATIONS LIKE THAT RELUCTANT

2   WITNESSES DO COME FORWARD.  AGAIN, IT UNDERSCORES THE

3   IMPORTANCE OF SECRECY.

4        AS I'VE ALSO MENTIONED, THE REQUIREMENT OF SECRECY

5   PROTECTS INNOCENT PEOPLE WHO MAY HAVE COME UNDER

6   INVESTIGATION, BUT WHO ARE CLEARED BY THE ACTIONS OF THE GRAND

7   JURY.  IT'S A TERRIBLE THING TO BE IMPROPERLY ACCUSED OF A

8   CRIME.  IT'S LIKE A SCARLET LETTER THAT PEOPLE SOMETIMES WEAR

9   FOREVER.  IT'S WORSE IF THE CRIME OR THE ACCUSATION NEVER

10  BECOMES FORMAL.  JUST THE IDEA THAT SOMEONE IS UNDER

11  INVESTIGATION CAN HAVE DISASTROUS CONSEQUENCES FOR THAT PERSON

12  OR HIS OR HER BUSINESS OR HIS OR HER FAMILY.  THIS IS ANOTHER

13  IMPORTANT REASON WHY THE GRAND JURY PROCEEDINGS MUST REMAIN

14  SECRET.

15        IN THE EYES OF SOME PEOPLE, INVESTIGATION BY THE

16  GRAND JURY ALONE CARRIES WITH IT THE STIGMA OR SUGGESTION OF

17  GUILT.  SO GREAT INJURY CAN BE DONE TO A PERSON'S GOOD NAME

18  EVEN THOUGH ULTIMATELY YOU DECIDE THAT THERE'S NO EVIDENCE

19  SUPPORTING AN INDICTMENT OF THE PERSON.

20        TO ENSURE THE SECRECY OF THE GRAND JURY PROCEEDINGS,

21  THE LAW PROVIDES THAT ONLY AUTHORIZED PEOPLE MAY BE IN THE

22  GRAND JURY ROOM WHILE EVIDENCE IS BEING PRESENTED.  AS I'VE

23  MENTIONED TO YOU NOW SEVERAL TIMES, THE ONLY PEOPLE WHO MAY BE

24  PRESENT DURING THE FUNCTIONING OF THE GRAND JURY ARE THE GRAND

25  JURORS THEMSELVES, THE UNITED STATES ATTORNEY OR AN ASSISTANT

PDF created with pdfFactory trial version www.pdffactory.com

31

1    WHO'S PRESENTING THE CASE, A WITNESS WHO IS THEN UNDER

2    EXAMINATION, A COURT REPORTER, AND AN INTERPRETER, IF

3    NECESSARY.  ALL THE OTHERS EXCEPT THE GRAND JURORS GO OUT

4    DURING THE DELIBERATION AND VOTING.

5          YOU MAY DISCLOSE TO THE U.S. ATTORNEY WHO IS

6    ASSISTING THE GRAND JURY CERTAIN INFORMATION.  AS I SAID, IF

7    YOU HAVE QUESTIONS, IF GRAND JURORS HAVE QUESTIONS THAT THEY

8    WANT ANSWERED, OBVIOUSLY THAT INFORMATION IS TO BE CONVEYED TO

9    THE U.S. ATTORNEY TO GET THE QUESTIONS ANSWERED.

10          BUT YOU SHOULD NOT DISCLOSE THE CONTEXT OF YOUR

11    DELIBERATIONS OR THE VOTE OF ANY PARTICULAR GRAND JUROR TO

12    ANYONE, EVEN THE GOVERNMENT LAWYERS, ONCE THE VOTE HAS BEEN

13    DONE.  THAT'S ONLY THE BUSINESS OF THE GRAND JURY.  IN OTHER

14    WORDS, YOU'RE NOT TO INFORM THE GOVERNMENT LAWYER WHO VOTED

15    ONE WAY ON THE INDICTMENT AND WHO VOTED THE OTHER WAY.

16          LET ME CONCLUDE NOW -- I APPRECIATE YOUR PATIENCE,

17    AND IT'S BEEN A LONG SESSION THIS MORNING -- BY SAYING THAT

18    THE IMPORTANCE OF THE SERVICE YOU PERFORM IS DEMONSTRATED BY

19    THE VERY IMPORTANT AND COMPREHENSIVE OATH WHICH YOU TOOK A

20    SHORT WHILE AGO.  IT'S AN OATH THAT IS ROOTED IN OUR HISTORY

21    AS A COUNTRY.  THOUSANDS OF PEOPLE BEFORE YOU HAVE TAKEN A

22    SIMILAR OATH.  AND AS GOOD CITIZENS, YOU SHOULD BE PROUD TO

23    HAVE BEEN SELECTED TO ASSIST IN THE ADMINISTRATION OF JUSTICE.

24          IT HAS BEEN MY PLEASURE TO MEET YOU.  I WOULD BE

25    HAPPY TO SEE YOU IN THE FUTURE IF THE NEED ARISES.  AT THIS

PDF created with pdfFactory trial version www.pdffactory.com

32

1    POINT, THE U.S. ATTORNEY, MR. ROBINSON, WILL ASSIST YOU IN

2    FURTHER ORGANIZATION.  SO THIS PART OF THE ADMINISTRATION OF

3    YOUR RESPONSIBILITY AS GRAND JURORS INVOLVING THE COURT IS

4    OVER.

5            IT MIGHT BE APPROPRIATE TO TAKE A BREAK BEFORE WE GO

6    ON TO THE NEXT PROCEEDING.  I'VE HELD THESE FOLKS FOR A LONG

7    TIME.

8            LADIES AND GENTLEMEN, MY GREAT PLEASURE TO MEET ALL

9    OF YOU.  GOOD LUCK WITH YOUR GRAND JURY SERVICE.  I THINK

10    YOU'LL FIND IT REWARDING AND INTERESTING AND COMPELLING.

11                        --O0O--

12

13

14

15            I HEREBY CERTIFY THAT THE TESTIMONY

16            ADDUCED IN THE FOREGOING MATTER IS

17            A TRUE RECORD OF SAID PROCEEDINGS.

18

19            _____

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com