KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California State Bar No. 233686
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6549

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    v.<br><br>ROBERTO FELIX-ROCHIN,<br><br>             Defendant. | Criminal Case No. 08CR1902-WQH<br><br>Date:    August 25, 2008<br>Time:    2:00 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:<br><br>(1)    SUPPRESS STATEMENTS<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and Douglas Keehn, Assistant U.S. Attorney, hereby files its Response and Opposition to the motions filed on behalf of Roberto Felix-Rochin ("Defendant"). This Response and Opposition is based upon the files and records of this case.

//
//
//
//
//
//

# I

# STATEMENT OF FACTS

**A.     Statement of the Case**

On June 11, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Roberto Felix-Rochin with being a Deported Alien Found in the United States in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment also alleges that Defendant was removed from the United States subsequent to January 6, 2000. Defendant entered a "not guilty" plea before the magistrate court on June 12, 2008.

**B.     Statement of Facts**

**1.     Defendant's Arrest**

On May 30, 2008, at approximately 11:00 a.m., United States Border Patrol Agent ("BPA") T. Barrientos responded to a call from the Boulevard Border Patrol Station that a sports-utility vehicle had picked up suspected illegal immigrants on Interstate Eight, heading eastbound in his vicinity. BPA Barrientos presently saw a vehicle matching the description he had received. BPA Barrientos initiated a vehicle stop on the suspect vehicle and identified himself as a Border Patrol Agent. Defendant was among the passengers in the vehicle. BPA Barrientos conducted an immigration field interview whereupon Defendant stated that he was a citizen of the Republic of Mexico and was without legal documents permitting him to enter and remain in the United States. Defendant was subsequently taken into custody and transported to the El Centro Border Patrol station for processing.

At the station, Defendant's biographical and biometric data were entered into law enforcement databases, revealing Defendant's criminal history and that Defendant had been previously removed from the United States.

**2.     Defendant's Statements**

At approximately 1:01 p.m. BPA Ivan Mendez advised Defendant of his rights under Miranda. Defendant indicated he understood those rights, and waiving those rights again admitted he was a citizen of the Republic of Mexico without legal permission to enter and remain in the United States. Defendant further admitted that he had been previously deported. Defendant stated

1 that he had made entry into the United States by walking across the international boundary near
2 Tecate, California, and that he had intended to reside and seek employment in Calexico, California.

3 **C.    Defendant's Criminal History**

4 On January 6, 2000, Defendant was convicted in the State of California, Oakland Superior
5 Court, for a violation of Penal Code Section 261, Rape by Force or Fear, for which he was sentenced
6 to eight years in prison.

## II

## DISCUSSION

**A.    Defendant's Suppression Motion Should be Denied**

**1.    Defendant Has Failed to Provide a Sworn Declaration**

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition." Here, Defendant has failed to support his allegations with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

//

//

### 2.    Defendant's Immigration Inspection Statements Should Not Be Suppressed

Defendant's statements made prior to his arrest were made in the context of routine border questioning by a United States Border Patrol Agent, the type of questions which have been found by the Supreme Court and the Ninth Circuit to be insufficient to trigger constitutional protections. Detaining a person for routine border questioning is not custodial. United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001). The Miranda requirement applies only when a defendant is in custody and undergoes custodial interrogation. The police do not need to give Miranda warnings before the defendant is in custody. United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981).

Defendant alleges that his pre-arrest immigration inspection statements should be suppressed because he was not Mirandized. The facts in our case indicate that Defendant was not in custody during the immigration inspection and therefore Miranda would not apply. Defendant was reasonably detained while the agent conducted an ordinary immigration inspection. The law clearly indicates that being detained for this purpose is permissible. See Stansbury v. California, 114 S.Ct. 1526 (1994) (defendant must be "in custody" to trigger need for Miranda warnings); Berkemer v. McCarty, 468 U.S. 442 (1984) (police officer whose "observations lead him reasonably to suspect" that an individual has committed a crime, may briefly detain that person to investigate the circumstances that provoked the officer's suspicions); United States v. Manasen, 909 F.2d 1357, 1358-59 (9th Cir. 1990) (routine questioning by customs officials is normally not custodial interrogation that triggers Miranda); United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986) (same); United States v. Woods, 720 F.2d 1022 (9th Cir. 1983) (brief questioning at airport based upon reasonable suspicion did not trigger Miranda).

Prior to the immigration inspection, Defendant was never told he was under arrest, and never even accused of a crime. Defendant was never forcibly removed or restrained, and was only detained for a short period of time prior to the statements. Defendant's statements were not made under circumstances requiring Miranda warnings and Defendant's motion to suppress those statements should, therefore, be denied.

### 3. Defendant's Post-<u>Miranda</u> Statement was Voluntary

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows that the statement was made after an advisement of <u>Miranda</u> rights, and that the statement was not elicited by improper coercion. See <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should not be found in the "absence of police overreaching").

A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The government bears the burden of establishing the existence of a valid <u>Miranda</u> waiver. <u>North Carolina v. Butler</u>, 441 U.S. at 373. In assessing the validity of a defendant's <u>Miranda</u> waiver, the court should analyze the totality of the circumstances surrounding the interrogation. See <u>Moran v. Burbine</u>, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see <u>United States v. Doe</u>, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (<u>en banc</u>)) (valid waiver because the 17-year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents); (2) the defendant's familiarity with the criminal justice system (see <u>United States v. Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters); (3) the explicitness of the <u>Miranda</u> waiver (see <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written <u>Miranda</u> waiver is "strong evidence that the waiver is valid"); <u>United States v. Amano</u>, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where <u>Miranda</u> rights were read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between the reading of the <u>Miranda</u> warnings and the interrogation or confession (see <u>Guam v. Dela Pena</u>, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between <u>Miranda</u> warnings and interview).

1    In this case, Defendant's post-arrest confession should not be suppressed because it was preceded by a knowing, voluntary, and intelligent Miranda waiver. Agents advised Defendant of his Miranda rights in the Spanish language. Defendant knowingly waived his Miranda rights and agreed to answer questions without the presence of an attorney. Defendant is familiar with the criminal justice system because of his prior arrests, and prior convictions. Defendant was advised of his rights in his native language, stated that he understood his rights and was willing to be interviewed without an attorney present. Defendant's post-Miranda interview immediately followed his waiver of rights. This entire exchange was videotaped. There is no allegation or evidence of any physical or psychological coercion by any Government agents. Based on the totality of the circumstances, Defendant's statements were the product of a knowing, intelligent, voluntary waiver of his Miranda rights and therefore should not be suppressed.

### 4.    Defendant's Pre-arrest Statements do not Invalidate His Waiver

Defendant also argues that his post-Miranda statement should be suppressed as the fruit of his earlier un-warned statement. Although Defendant does not cite Missouri v. Seibert, 124 S. Ct. 2601 (2004) (plurality opinion), a discussion of that case is appropriate in this instance. The Government does not concede that the pre-arrest immigration proceeding was a custodial interview, never the less, even if it were, the post-Miranda statement would still be admissible. It is unclear whether the Court must follow the plurality opinion in Seibert or only that opinion as limited by Justice Kennedy. However, no matter what standard the Court follows, Defendant's post-arrest statements would remain admissible.

In Seibert, the defendant was taken to the police station and left alone in an interview room for 15 to 20 minutes. Id. at 2605. The defendant was intentionally not given her Miranda warnings. Id. The defendant was questioned without the officers giving her Miranda warnings for 30 to 40 minutes, the officers were squeezing her arm, and the officers kept repeating "Donald was also to die in his sleep." Id. After the defendant finally admitted that she knew of the crime, she was given a 20-minute coffee and cigarette break. Id. The officers then turned on a tape recorder, gave the defendant her Miranda warnings, and obtained a signed waiver of rights from her. Id. The officers resumed the questioning by confronting the defendant with her pre-warning statements. Id.

1   On appeal, the defendant challenged the admissibility of her statement. The Supreme Court issued a plurality opinion holding that "when interrogators question first and warn later," the threshold issue is "whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as Miranda requires." Id. at 2610.

Here, the warnings did provide Defendant with the opportunity to validly waive his Miranda rights. First, Defendant provided few details regarding citizenship and status during the initial immigration inspection in the field. The questioning at the border patrol station was a markedly different experience from the short statements made during the immigration inspection in the field. Second, the pre-arrest statements occurred in the field before the post-arrest statements at the border patrol station. Third, the statements made during pre-arrest border inspection were made to Agent Barrientos, while the post-arrest statements were made to Agent Mendez . Thus, there was no continuity of police personnel. Finally, Agent Mendez did not treat the questioning as continuous with the pre-arrest statements.

Unlike Siebert, the agents did not employ a strategy to undermine the Miranda warnings. The un-warned statements were obtained for immigration purposes. There is no evidence of systematic, exhaustive, and manipulative questioning. Moreover, Agent Mendez explained to Defendant  he was now being prosecuted prior to reading his Miranda rights. In the end, a reasonable person in Defendant's shoes would have seen the post-arrest border patrol station questioning as a new and distinct experience. As a result, the Miranda warnings would have presented a genuine choice whether to provide post-arrest statements.

In fact, Defendant's case is less like Seibert and more like Oregon v. Elstad, 470 U.S. 298 (1985). In Elstad, the police went to the defendant's house to arrest him on a charge of burglary. While arresting the defendant, an officer and the defendant made a "brief stop in the living room," id. at 315, where the officer said he "felt" the young man was involved in a burglary, id. at 301 (internal quotation marks omitted). The defendant acknowledged he had been at the scene. Id. The Supreme Court noted that the pause in the living room "was not to interrogate the suspect but to notify his mother of the reason for his arrest." Id. at 315.

At the station, the defendant was given Miranda warnings and made a full confession going well beyond the scope of the laconic prior admission. Id. at 301. In holding the second statement admissible and voluntary, Elstad rejected the "cat out of the bag" theory that any short, earlier admission, obtained in arguably innocent neglect of Miranda, determined the character of the later, warned confession. Elstad, 470 U.S. at 311-314. On the facts of that case, the Court thought any causal connection between the first and second responses to the police was "speculative and attenuated." Id. at 313.

While Defendant may argue the pre-arrest statements caused him to waive his Miranda rights, there is no evidence supporting this argument and it is speculative. Therefore, the pre-arrest statements did not invalidate his Miranda waiver.

### III

### CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's Motion.

Dated: August 6, 2008.

                                       Respectfully Submitted,

                                       KAREN P. HEWITT
                                       United States Attorney

                                       s/ *Douglas Keehn*
                                       DOUGLAS KEEHN
                                       Assistant United States Attorney
                                       Attorneys for Plaintiff
                                       United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>      v.<br><br>ROBERTO FELIX-ROCHIN,<br><br>          Defendant. | ) Criminal Case No. 08CR1902-WQH<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

    I, DOUGLAS KEEHN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION:**

    1.    SUPPRESS STATEMENTS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **Kris J. Kraus**
    Kris_Kraus@fd.org

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on August 6, 2008.

                                                          *s/ Douglas Keehn*
                                                         DOUGLAS KEEHN